653 So.2d 1322 (1995)
HARRY BOURG CORPORATION
v.
Alex PUNCH.
HARRY BOURG CORPORATION
v.
Walton J. DAISY, Jr.
No. 94 CA 1557.
Court of Appeal of Louisiana, First Circuit.
April 7, 1995.
*1323 Robert J. Prejeant, Houma, for defendants-appellants Walton J. Daisy, Jr. and Succession of Alex Punch.
Dennis John Hauge, Houma, for plaintiff-appellee Harry Bourg Corp.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
LOTTINGER, Chief Judge.
These consolidated cases involve a certain tract of disputed property in Terrebonne Parish. Plaintiff, Harry Bourg Corporation, instituted this boundary action on January 24, 1985, against defendants, Alex Punch[1] and Walton J. Daisy, Jr. In answer, defendants allege that they obtained their land by virtue of an act of partition and an act of sale, respectively, and that they acquired ownership of the disputed property through acquisitive prescription.
The trial court ruled that the disputed property exceeded that which was called for in defendants' titles and, therefore, defendants could establish ownership only through thirty years acquisitive prescription. The court noted that for purposes of acquisitive prescription without title, possession extends only to that which is actually possessed. The court concluded that because defendants did not actually possess the property in dispute, they had not established ownership through acquisitive prescription. The court then set the boundary according to the survey submitted by the court appointed surveyor which established the boundary according to plaintiff's title.
*1324 In contrast, we find that defendants established just title to the disputed property. However, because we find that plaintiff maintained corporeal possession of the disputed property, we affirm the trial court's judgment in favor of plaintiff.
The land in dispute is marshland located in Section 35 of Township 19 South, Range 16 East, Terrebonne Parish. By instrument dated December 14, 1934, Mr. Harry Bourg purchased the following portions of Section 35 from the Charles W. Buckley Trust:
The East-half (E ½) and the East-half of the Southwest quarter (E ½ of SW ¼) also the Southwest quarter of the Southwest quarter (SW ¼ of SW ¼) of Section Thirty-five (35) of Township 19 S., Range 16 East, containing 448 acres, more or less.
This property was sold to plaintiff on April 7, 1955.
Defendant, Daisy, asserts that he acquired the following property by virtue of an act of sale from Eldridge Dehart on January 26, 1968:
One certain lot or portion of ground designated as Lot No. 3 on a plat of survey by J.C. Kerstens, C.E. dated April 7, 1964, in Section 35, T 19 S, R 16 E, Parish of Terrebonne measuring 128.2 feet front on Bayou DuLarge by a depth of 1441.8 feet. Said map attached to partition of property executed on May 15, 1964, between Alex Punch, Alvin Guidry, Eldridge DeHart, Celina DeHart, Alphonse J. Authement, Jr and the heirs of Zedolia DeHart, which partition is duly recorded in Terrebonne Parish.
Defendant, Punch, asserts that he acquired his property in the following manner. On April 26, 1960, Matilda DeHart sold to Punch all of her interest, being an undivided one-sixth, in the following described property:
A certain tract of land in Sec. 35, T-19-S, R-16-E, in the Parish of Terrebonne, Louisiana, about 18 miles below the City of Houma, measuring a front of four (4) arpents on the left descending bank of Bayou DuLarge by depth of survey, the side lines opening to the rear; bounded above by property of John Theriot, formerly Abel Blanchard, and below by property of Anthony Lovell, formerly Ellis Billiot; together with the buildings and improvement thereon, and all rights, ways, privileges, servitudes and prescriptions thereto belonging.
Punch obtained ownership of his property on May 15, 1964, by act of partition with the other DeHart heirs. The property he acquired was described in the partition as:
One certain lot or portion of ground designated as Lot No. 1 on a plat of survey by J.C. Kerstens, C.E. dated April 7, 1964, in Section 35, T 19 S, R 16 E, Parish of Terrebonne measuring 128.2 feet front on Bayou DuLarge by a depth of 1441.8 feet.
Based on these descriptions, defendants contend that Lots 1 and 3 are 1441.8 feet deep. Approximately one-half of this depth overlaps the property claimed by plaintiff. See Appendix A.

ASSIGNMENT OF ERROR
In brief, the defendants assert that the trial court erred as a matter of law and fact "in concluding that [they] had not established title to the entirety of their tracts as described in the Kersten Survey by virtue of ten years' acquisitive prescription."
While this suit began as a boundary action, title prescriptions may be pled in boundary actions, and boundary prescriptions in title suits. Ledoux v. Waterbury, 292 So.2d 485, 487 (La.1974). By pleading prescription, defendants had the burden of proving the four requisites for ten years acquisitive prescription: (1) possession for ten years; (2) good faith; (3) just title; and (4) a thing susceptible of acquisition by prescription. La.Civ.Code art. 3475. The two requirements at issue in this case are just title and possession.

JUST TITLE
In this case, the trial judge concluded that defendants did not have just title to the disputed property.
*1325 A title is just for purposes of acquisitive prescription when the deed is regular in form, is valid on its face, and would convey the property if executed by the owner. O'Brien v. Alcus Lands Partnership Trust, 577 So.2d 1094, 1097 (La.App. 1st Cir.1991); La.Civ.Code art. 3483. The title relied upon by one seeking to establish ten years acquisitive prescription must sufficiently describe the property so as to transfer its ownership. One must be able to identify and locate the property from the description in the deed itself or from other evidence which appears in the public records. O'Brien, 577 So.2d at 1097.
In his oral reasons for judgment, the trial judge stated that "the property as presently claimed by the Punch heirs, and Mr. [Daisy], exceed what is called for in their title." In reaching this conclusion, the trial judge reviewed previous property descriptions contained in defendants' chain of title. The judge stated:
As you look back in the property descriptions, you find that the subject property presently owned by Mr. [Daisy] and the Punch heirs were originally part of the sale by Robert Barrow to a Mr. Billiot and forms Lots 1, 2, 3, 4 and 5 of Section 35. When you view the descriptions, most of the depths and the sales that follow refer to depth of survey. Depths of survey historically has meant the depth by which the governmental original survey showed the property to run normally that is in this area that has been generally at twenty arpents deep or forty arpents deep, depending upon section lines. In this particular case when the governmental survey was done, lots were depicted on that governmental survey and unfortunately for Mr. [Daisy] and the Punch heirs that depth was not anything near twenty arpents or forty arpents, but was relatively close to Bayou Dularge.
The disputed property was purportedly transferred to Daisy by act of sale dated January 26, 1968, and to Punch by act of partition dated May 15, 1964. The trial judge apparently did not consider the property descriptions contained in these acts which specifically state that Lots 1 and 3 have a depth of 1441.8 feet. Although the prior property descriptions in defendants chain of title did not refer to this depth, by virtue of the properly recorded sales, partition and survey, the defendants' acquired just title to the disputed property which is located within the 1441.8 feet. The trial judge erred in concluding that defendants were attempting to possess property beyond the limits of their titles.
The next question to be decided is whether or not the defendants have exercised sufficient possession to acquire ownership through ten year acquisitive prescription.

POSSESSION
In brief, defendants assert that they established ownership of the disputed property by ten years acquisitive prescription.
Ordinarily, the title conferred by acquisitive prescription extends only to that property which has been actually possessed. However, when one possesses under just title, possession as to any part of the immovable constitutes constructive possession as to those parts under such title that have not been actually possessed. O'Brien, 577 So.2d at 1097; La.Civ.Code art. 3426. The doctrine of constructive possession is not, however, unlimited. Property cannot be legally possessed by adverse parties simultaneously, and constructive possession cannot prevail over adverse corporeal possession. Tenneco Oil Company v. Pitre, 496 So.2d 502, 505 (La.App. 1st Cir.), writ denied, 497 So.2d 1388 (La.1986).
At trial, the Punch heirs established that their family has lived on Lot 1 since the property was purchased in 1964. Initially, the property was cleared to a depth of 200 feet and then to approximately 500 or 600 *1326 feet.[2] One heir testified that he hunted on the rear of the property every winter from 1964 to 1989. Another heir testified that beginning in 1969, he trapped on the rear of the property for three winters. No fences, signs or markers were placed on the rear property line.
Daisy established that members of his family have lived on Lot 3 since the 1968 partition. Daisy's father-in-law resided on the property for the first six or seven years, followed by Daisy's brother-in-law. During this time, only the first 200 to 300 feet of property was cleared. When Daisy moved onto the property in 1982 he cleared approximately 800 feet.[3] After this suit was filed in 1985, Daisy's son erected a fence across the property about 700 or 800 feet back. No one in the Daisy family ever used the rear portion of the property.
Defendants contend that by possessing the front portions of their property, they have constructive possession of the entire 1441.8 feet as described in their titles. Defendants further contend that because there is no proof of adverse corporeal possession by the plaintiff, they have acquired ownership through ten years constructive possession.
Contrary to defendants' assertion, there is evidence that plaintiff had corporeal possession of the disputed property. The disputed property is contained within Mr. Harry Bourg's 1934 act of sale and within the 1955 act of sale from Mr. Harry Bourg to plaintiff. Upon acquiring the property, plaintiff dug an extensive network of trenasses[4] along its property line and within the limits of its title. No trenasse was dug along the disputed property line because the ground was not suited for the trenasse machine. During a 1960 survey, concrete monuments were placed on all corners of the plaintiff's property line, including those corners within the disputed area. Wooden stakes were driven between these monuments marking the property line. Plaintiff regularly patrolled the property line cleaning the trenasses, checking the monuments, and replacing stakes. Before and after 1964, plaintiff granted numerous trapping leases on all of its DuLarge property, including the disputed area. As of 1983-84, with the decline in the trapping industry, only two trappers continue to work plaintiff's entire DuLarge property.
By granting trapping leases, digging trenasses and maintaining and patrolling property lines, plaintiff established corporeal possession of the disputed property in 1955. See Tenneco, 496 So.2d at 505; La.Civ.Code arts. 3425, 3437 and 3438; La.Code Civ.Pro. art. 3660. Defendants' constructive possession cannot prevail over plaintiff's continuous adverse corporeal possession. Tenneco, 496 So.2d at 505. By permitting plaintiff's corporeal possession to continue, defendants cannot claim the property through ten years constructive possession.
In brief, the Punch heirs also contend that by hunting and trapping in the rear of their property, they have had continuous and uninterrupted corporeal possession of the disputed property since 1964. They contend that these activities support a claim of corporeal possession because the type of possession necessary to support the prescription of ten years is dependent on the use for which the land is destined. McDaniel v. Roy O. Martin Lumber Co., Inc., 560 So.2d 676, 680 (La.App. 3rd Cir.1990); Turner v. Denkmann Lumber Company, 244 So.2d 868, 870 (La.App. 1st Cir.), writ denied, 258 La. 366, 246 So.2d 684 (1971). The disputed land is marshland which is unfit for agricultural purposes. The Punch heirs contend that annual hunting and occasional trapping supports their claim of corporeal possession.
We need not determine whether annual hunting and brief periods of trapping constitute *1327 corporeal possession. To maintain a claim for ten years acquisitive prescription, possession must be continuous and uninterrupted. La.Civ.Code art. 3476. Because we have previously determined that the plaintiff maintained corporeal possession of the disputed property, the alleged corporeal possession by the Punch heirs could not have been uninterrupted.
Both defendants have failed to establish ownership of the disputed property by ten years constructive or corporeal possession. Thus, we find that the trial judge did not err in establishing the boundary according to plaintiff's title.

CONCLUSION
For the foregoing reasons, we affirm the decision of the trial judge establishing the boundary according to plaintiff's title. Costs of this appeal are assessed 50% against defendant, Daisy, and 50% against defendant, Punch.
AFFIRMED.
SHORTESS, J., concurs with reasons.
SHORTESS, Judge, concurring.
Plaintiff had both title and corporeal possession of the disputed property when defendants acquired their titles. For defendants to acquire plaintiff's property by ten-year acquisitive possession, they have the burden of proving corporeal possession which was "continuous, uninterrupted, peaceable, public, and unequivocal." La.C.C. art. 3476.
A possessor maintains possession until he either manifests his intention to abandon it or is evicted by another by force or usurpation. La.C.C. art. 3433. In order to attain the type possession required by Civil Code article 3476, defendants first had to evict plaintiffs by usurpation.[1]
What constitutes eviction is a question of fact. The use of property by an adverse possessor according to its nature ordinarily constitutes an eviction. See La.C.C. art. 3433, comment (d). However, the disturbance in possession must be accomplished by some actual deed or act that brings home to the original possessor the realization that his dominion is being seriously challenged. Pittman v. Bourg, 179 La. 66, 153 So. 22, 24 (1934); Boneno v. Lasseigne, 534 So.2d 968, 972 (La.App. 5th Cir.1988).
The Punch heirs' annual hunting and occasional trapping were not acts sufficient to give notice to plaintiff that someone was challenging its dominion, and thus there was no usurpation. Defendants never attained corporeal possession because plaintiff never lost its original possession.
I respectfully concur.
NOTES
[1] Alex Punch died on May 23, 1993. His heirs were substituted as parties defendant.
[2] The cleared portion of the Punch property does not extend into the disputed area.
[3] The cleared portion of the Daisy property does overlap the disputed area. However, the overlapping section was cleared only three years before this suit was filed. Prior to 1982, the Daisy's had cleared only 200 or 300 feet.
[4] A trenasse is a man-made shallow ditch or trench.
[1] Defendants do not allege plaintiff abandoned the property or were evicted by force.