h MURRAY, Judge.
These consolidated appeals arise from a dispute over the boundary between two homes in the uptown area of New Orleans. Appellants, Dr. and Mrs. Ensenat, originally filed suit against their neighbors, Mr. and Mrs. Edgecombe, appellees herein, seeking preliminary and permanent injunctions, and to be declared owners of a strip of land at the western boundary of their property based on acquisitive prescription. The Ensenats subsequently filed a second suit against the Ed-geeombes seeking damages for injuries sustained by them in the dispute that centered around the portion of land that was the object of the earlier suit. By reeonventional demand, the Edgecombes sought preliminary and permanent injunctions, to have encroachments on their land removed, repayment of monies due under a contract between the parties, and damages. The trial court entered judgment in favor of the Edgecombes as to the claims by the Ensenats. The court denied the Edgecombes’ claim for damages, but entered judgment in their favor on the other claims raised by their reeonventional demand. The Ensenants appealed, assigning several errors by the trial court. For the reasons set out below, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY:
12Pr. and Mrs. Ensenat bought their home at 7630 Jeannette Street on July 17, 1962. Mr. and Mrs. Edgecombe bought the adjacent property at 7636 Jeannette Street on March 23, 1988. In early 1990, the parties agreed that Mr. Edgecombe would tear down a fence separating a portion of the two properties and replace it; in exchange Dr. Ensen-at was to pay for the materials to rebuild the fence. Mr. Edgecombe erected the new fence on what he believed to be the property line. He testified that he removed the old fence posts but did not mark the spots. He then inserted new posts in line with a cedar tree which he believed to be the same location as the old fence. This turned out to be the first salvo in a war that erupted between these neighbors. Dr. Ensenat did not want to give up the small strip of land that he felt he lost when the new fence was erected. He refused to reimburse Mr. Edgecombe for the fence materials, and ordered that the fence be moved to the position of the original fence. Mr. Edgecombe refused to comply, and the first of the Ensenat suits was filed on July 3, 1990. This “Petition for Preliminary and Permanent Injunctions and to Declare Ownership to Land Based on Acquisitive Prescription” was allotted as case no. 90-13002. Documents filed in the record, requesting an indefinite continuance, indicate that the parties hoped to settle this dispute. Unfortunately, the settlement did not materialize, the war escalated, and on June 10, 1991, the Ensenats filed a “Petition for Damages” against Mr. Edgecombe and ABC Insurance Company, the unknown homeowner insurance carrier of the Edgecombes.[1] This case was allotted as no. 91-10990. The cases eventually were consolidated for trial.
On October 4, 1991, Mr. and Mrs. Edge-combe filed an “Answer and Reeonventional Demand” in case no. 90-13002. Mr. Edge-combe filed an “Answer and Reeonventional Demand” in case no. 91-10990. Each paragraph of the answer filed in each case was numbered to correspond with and respond to the numbered paragraphs of the petition in that case. For this reason, the reconventional demand in ease no. 90-13002 was set forth in paragraphs 19 through 22; the reconven-tional demand in case no. 91-10990 was set forth in paragraphs 22 through 25. Each of these pleadings contained hand-written service instructions, and each record contains a _|3citation showing that the answer and recon-ventional demand was served on counsel for the Ensenats.
On December 10, 1991, the Edgecombes filed a “First Supplemental and Amending Petition in Reconvention” in case no. 90-13002. This amending petition, which added a single paragraph identified as paragraph 25[2], alleged that Dr. Ensenat had enlarged *141 his driveway and built a fence that encroached on the Edgecombe property so that the entire fence and a portion of the driveway encroached on Edgecombe land. The amending reconventional demand did not contain service instructions. The supplemental and amending petition in reconvention was not filed in case no. 91-10990.
On December 26, 1991 the Ensenats filed an Answer to Reconventional Demand in each ease. The answer in case no. 90-13002 answered paragraphs 19 through 22 of the original reconventional demand and paragraph 25 of the first supplemental and amending reconventional demand. The answer in case no. 91-10990 answered paragraphs 22 through 25 of the original recon-ventional demand filed in that case, and then answered paragraph 25 of the first supplemental and amending reconventional demand, which had been filed in case no. 90-13002 but not in case no. 91-10990.
After the initial action was filed by the Ensenats, the parties engaged in guerilla warfare with each other. This included throwing mud, uprooting geraniums, removing gates, tearing down and reconstructing fences, and other childish acts too numerous to mention. Most of these acts of mischief were alleged in the dueling pleadings.[3]
The consolidated eases were tried to the court on May 5 and 9, 1994, and the matter was taken under advisement. On October 27,1994, the court entered judgment in favor of the Edgecombes and against the Ensen-ats, dismissing their causes of action, with prejudice. As to the reconventional demand by the Edgecombes, the judgment ordered: removal of the encroaching fences and driveway at the Ensenats’ expense within thirty days; Dr. Ensenat to | ¿reimburse Mr. Edge-combe the sum of $146.00 for materials purchased in reconstruction of the fence.[4] The judgment denied the Edgecombes’ claim for damages. This appeal followed.
DISCUSSION:
Several of the issues raised by the Ensen-ats are related, and will be discussed together. In their first assignment of error the Ensenats aver that the district court erred by ruling at the commencement of the trial that the boundary dispute required the court to render a decision concerning the location of the entire western boundary between the two properties, not just the portions of that boundary that were placed at issue by their suit. The second assignment of error is that the district court erred by reinstating the Edgecombe’s reconventional demand after the trial had been concluded, and by rendering a decision thereon without first giving the Ensenats an opportunity to present a defense to the claims asserted therein.
The record reveals a feud reminiscent of the Hatfields and McCoys. Dr. and Mrs. Ensenat, original plaintiffs herein, claimed ownership of a strip of land at the rear of their property, which they allege they acquired either under their original title or by acquisitive prescription. They asked the court to set the western boundary as to this portion only. The Edgecombes requested that an additional part of the boundary between the two properties be determined. The Ensenats answered the Edgecombes’ re-conventional demand, including the first supplemental and amending reconventional demand, which put at issue the remaining boundary between the Edgecombe and En-senat property. The answer, which was filed in each case, specifically denied the allegation contained in the supplemental and amending reconventional demand[5]. Consequently, issue was joined as to the claims asserted in the original petition, and the original and supplemental reconventional demand. The trial court recognized that the parties were seeking to have various boundaries between their properties determined, regardless of how they titled their pleadings. We find no error in the court’s decision to consider and *142 determine the entire boundary between these two properties.
IsNor do we find error in the trial court’s reinstatement of the Edgeeombes’ first supplemental and amending reconven-tional demand. The Ensenats argue that because the Edgeeombes voluntarily dismissed the first supplemental and amending reconventional demand, the judge erred in reinstating it. It is.clear that the Edge-combes voluntarily dismissed their supplemental demand after the judge could find no service instructions on the pleading, nor an answer on behalf of the Ensenats, and the Ensenats’ attorney claimed that he had never answered it because it was never served. However, contrary to their counsel’s claim to the court, the Ensenats had answered; their answer was in the record in each case. Once this was pointed out to the court, it reinstated the reconventional demand.
The Ensenats were not prejudiced by the reinstatement of the reconventional demand. The property line at issue was a straight line; the evidence that would have been presented to determine where that line was with regard to the front of the lot (at issue in the reconventional demand) was the identical evidence that was presented to determine where it was with regard to the rear of the lot (at issue in the original action). In addition, we note that the reconventional demand was not dismissed until the morning of trial and that counsel for the Ensenats was fully aware that the court was going to rule on the entire line between the two properties. The court advised the parties that:
I think I indicated to all parties in chambers and I’ll say it for the record, I’m not going to piecemeal this matter, I’m going to resolve all of the issues in this matter so that we can get this over. It is clear to me that these parties can’t live in harmony and for me to piecemeal this would not resolve anything for them. So I’m going to deal with the entire issue here.
With respect to that issue I partially agree with you that issues were not joined as to that, but in this matter because of the issues that you have raised and because of their right to a certain affirmative defense as a result of your claim, I have to deal with that issue, so I’m going to deal with it and I will rule on the entire line here.
To which ruling counsel for the Ensenats noted an objection. The Ensenats’ first and second assignments of error have no merit.
The third, fourth and fifth assignments of error are also related and will be discussed together. By these assignments the Ensenats assert that the trial court erred by not recognizing their act of sale and the map attached thereto, which they contend shows that the fence along 16their driveway is on their property. Alternatively, they assert that they acquired the disputed four inch strip by virtue of acquisitive prescription. Finally, even if they were not owners of the disputed strip of property, they contend that they extended their driveway and erected the fence along the driveway in the good faith belief that they were the owners of the property so that the court erred in ordering them to remove the fence at their expense.
Dr. Ensenat testified that the fence, which was located near the center of his western property line, was in place when he bought his home in 1962. He believed this fence was on the property line because the map annexed to his act of sale allegedly shows the eastern boundary of his property to be down the middle of brick pillars located on the eastern boundary. Measuring fifty feet west from the middle of these eastern pillars would place the western property line where the fence was located.
We agree with the trial court’s finding that the original fence encroached onto the Edge-combe property. The map annexed to the Ensenats’ act of sale is ambiguous. It does not clearly delineate an eastern boundary, but rather has several hand drawn vertical lines in the vicinity of the eastern property line. However, the property description in the Ensenat title is not ambiguous. The written property description in the Ensenat act of sale provides that the property “commences at a distance of 95 feet from the corner of Adams and Jeannette Streets and measures thence 50 feet front on Jeannette Street ...” (emphasis added). This is consistent with the written property description *143 in the Edgecombe act of sale, which provides that the property “begins at a distance of 45 feet from the corner of Jeannette and Adams Streets, and measures thence 50 feet front on Jeannette Street ...” (emphasis added). Adams Street is to the west of both properties.
James Couterie, a certified land surveyor, was the only expert to testify at trial. Mr. Couterie’s firm performed surveys on the Edgecombe property in 1972, 1988 and in March of 1994. His firm had also performed surveys on the Ensenat property in 1925, 1931, and 1962. In 1990 his firm was requested to resurvey the Ensenat property and a field crew measured the property, but at Dr. Ensenat’s request the survey was never finalized. Mr. Couterie testified that when property is resurveyed, the surveying firm traces over the previous survey and then checks the measurements. He stated that the previous surveys done on the two pieces of 17property were not as accurate as the survey he did in anticipation of litigation, because generally “homestead” surveys are not very detailed. He explained that in the 1920’s, ’30’s, ’40’s and ’50’s, homesteads seldom asked for details such as elevations, or delineation of where fence posts or sidewalks were located. Those types of measurements are usually only requested in cases where encroachments are at issue.
Based on his comparisons of all the different surveys of the two pieces of property, it was his opinion that the fences located towards the rear of the properties were on the Edgecombe side of the property line. Mr. Couterie testified that his conclusions were consistent with a survey done by J.J. Krebs & Sons in 1990 at Dr. Ensenat’s request. That survey was entered into the record under a joint stipulation.[6] It was Mr. Cout-erie’s expert opinion that no weight should be given to the map attached to Dr. Ensen-at’s act of sale because it was not detailed enough to indicate the correct property line.
The court accepted Mr. Couterie’s surveying methods and his opinion. We find that the record fully supports the trial court’s determination that the original fence was on the Edgecombes’ property.
We also find that the record supports the trial court’s rejection of the Ensen-áis’ alternative argument that they acquired the additional property through either ten or thirty year acquisitive prescription. Louisiana Civil Code art. 3473, which governs acquisitive prescription of ten years, provides that: “Ownership and other real rights to immovable property may be acquired by the prescription of ten years.” The requisites for the acquisitive prescription of ten years are: possession for ten years, good faith, just title, and a thing susceptible of acquisition by prescription. La.Civ.Code art. 3475.
Dr. Ensenat argues that he had a good faith belief that he owned the strip of land in question because of his act of sale and the map attached thereto. The Edgecombes respond that ten years acquisitive prescription did not accrue in the Ensenats’ favor because they did not have | &just title to the disputed property since the map annexed to their act of sale lacks any definitive description of the boundaries or actual location of the property fine.
A title is just for purposes of acquisitive prescription when the deed is regular in form; is valid on its face, and would convey the property if executed by the owner. Harry Bourg Corp. v. Punch, 94-1557, p. 4 (La.App. 1st Cir. 4/7/95), 653 So.2d 1322, 1325. The title relied upon by one seeking to establish ten year acquisitive prescription must sufficiently describe the property so as to transfer its ownership. One must be able to identify and locate the property from the description in the deed itself or from other evidence which appears in the public records. Id. This is necessary because one cannot by the prescription of ten years acquire property not embraced within the title upon which the plea of prescription is founded. Honeycutt v. Bourg, 588 So.2d 1204, 1207 (La.App. 1st Cir.1991). Because the Ensenat title did not encompass the disputed strip of land, one *144 of the requisites for ten year acquisitive prescription is lacking. The trial court correctly found that they failed to prove ten year acquisitive prescription.
The trial court also found that the Ensenats failed to prove thirty year acquisitive prescription. We agree. Ownership of an immovable through prescription of thirty years requires possession for thirty years of a thing susceptible of acquisition by prescription, but does not require possession in good faith or just title. La.Civ.Code art. 3486. For purposes of thirty year acquisitive prescription, possession extends only to that which has been actually possessed. La.Civ. Code art. 3487.
The Ensenats did not purchase the property until 1962. Therefore, they attempted to prove thirty years actual, uninterrupted prescription through the testimony of Barbara Crane, the daughter of the previous owners of their property. Mrs. Crane testified that she moved out of her parents’ home when she married in 1952. She knew that her father cut grass and performed general maintenance between the two properties, but was unclear as to exactly what areas. She had no personal knowledge of what occurred between 1952, when she left her parents’ home, and 1962, the year the Ensenats purchased the home. The trial court found her testimony was not sufficient to prove that the Ensenats had actually possessed the disputed property for thirty |9years. We cannot say that this finding of fact is clearly wrong, and thus we will not upset it on appeal.
We also find no error in the trial court’s ordering the Ensenats to remove the encroaching fence and portion of driveway at their cost. Mr. Couterie testified that based on a comparison of measurements made by his field crew and the survey done by J.J. Krebs & Sons, both done in 1990, and his survey in 1994, the driveway Dr. Ensenat had repaved and the fence he had constructed adjacent to the driveway encroached on the Edgecombe property by as much as ten inches. Louisiana Civil Code art. 670 controls in this instance. It provides that:
When a landowner constructs in good faith a budding that encroaches on an adjacent estate and the owner of that estate does not complain within a reasonable time after he knew or should have known of the encroachment, or in any event complains only after the construction is substantially completed the court may allow the building to remain. The owner of the budding acquires a predial servitude on the land occupied by the budding upon payment of compensation for the value of the servitude taken and for any other damage that the neighbor suffered.
There is no question that Dr. Ensenat was in bad faith when he extended his driveway and budt the fence along it. As the trial court noted in its reasons for judgment, all of the various lawsuits had been filed and were being litigated actively when Dr. Ensenat had this work done. The ownership of the property was hotly disputed.[7] The revision comments to La.Civ.Code art. 670 indicate that, according to well-settled jurisprudence, “one who encroaches on the land of another in bad faith, that is, knowingly, is bound to remove the encroachments and pay damages.” Esnard v. Cangelosi, 200 La. 703, 8 So.2d 673 (1942); Barker v. Houssiere-Latreille Oil Co., 160 La. 52, 106 So. 672 (1925); Gordon v. Fahrenberg & Penn, 26 La.Ann. 366 (1874). The record fully supports the trial court’s finding that Dr. Ensenat was not in good faith when he constructed this driveway and fence on the Edgecombe property, and ordering the Ensenats to remove the encroaching fence and portions of driveway at their cost.
In a sixth assignment of error the Ensenats claim that the court erred by finding that they were liable for the payment of $150.56 to the Edgecombes in reimbursement for the materials used to construct the new fence at the rear of the property. Because the appellants failed to brief Imor argue this issue, it is considered abandoned. Uniform Rules, Courts of Appeal, Rule 2-12.4; also see Crifasi v. Crifasi 94-0962, p. 3 (La.App. 4th Cir. 1/19/95), 650 So.2d 347, 349.
*145 The Ensenats seventh assignment of error alleges that the Edgecombes’ reconven-tional demand concerning the strip of land nearest the street was petitory, and they did not carry their burden of proving ownership of the disputed strip of land. We disagree. The record supports the finding that the Edgecombes owned the disputed strip of land. This strip was included in their title, which was in the record. There was no evidence that the property description in the act of sale was erroneous or that the Edge-combes’ title was clouded in any way. They carried their burden of proving ownership of this portion of land.
In their final assignment of error the Ensenats argue that the trial court erred in not awarding them damages for personal injuries sustained at the hands of the “ex-Marine, neighborhood bully” Robert Edge-combe. The court apparently did not give much credence to the evidence of the violence Mr. Edgecombe allegedly visited on his “older neighbors.” Although the Ensenats offered evidence regarding the alleged assault and battery by Mr. Edgecombe on Dr. Ensenat, the trial court found the testimony of the obviously biased witnesses to be inconsistent. When findings of fact are based on credibility of witnesses, the manifest error standard applies; only the factfinder can be aware of variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Thus, we will not upset the trial court’s finding in this regard. Because the court found the parties mutually and equally at fault in this feud, it dismissed both sides’ complaints in this regard. The record fully supports the court’s finding that both neighbors were equally at fault by trespassing on each other’s property, tearing down and rebuilding fences, name-calling, mud-slinging and plant-poisoning. This assignment of error is without merit.
The Ensenats complain that the judgment fails to address the issue of ownership or to declare the owner of the disputed property. We disagree. In deciding that the Ensenats did not own the portion of land they claimed in their petition, either by title or through acquisitive prescription, the court recognized that the Edgecombes were the owners of that portion of land. By deciding that the Ensenats’ driveway and fence encroached on the Edgecombes’ property, lathe court recognized that the Edgecombes were the owners of that portion of land. There is no need to remand this ease to the trial court to amend the judgment because it did not affect the title to either piece of property. Rather, the judgment affirmed the written property descriptions contained in the titles to both pieces of property. Contra Deano v. Brouillette, 95-1856 (La.App. 4th Cir. 11/16/95), 664 So.2d 1283.
Accordingly, for the reasons set forth above, the judgment of the trial court is affirmed. All costs of the appeal are assessed to appellants.
AFFIRMED.

. The actual insurer was never properly brought into the suit, and is thus, not involved in this appeal.

. The additional paragraph should have been designated as paragraph 23 as the last paragraph of the original reeonventional demand filed in case no. 90-13002 was paragraph 22.

. At some point prior to trial on the merits the parties entered into a consent judgment agreeing to "back off.”

. The court also assessed the Ensenats for expert witness fees of $550.00.

.Although the first supplemental and amending reconventional demand was not filed in case no. 91-10990, the Ensenats filed an answer in that case denying the claim raised in the amending reconventional demand.

. The record reflects that a joint stipulation was entered wherein it was agreed that a representative of J.J. Krebs & Sons was called to testify, and that if he did testify he would state that his firm made a survey of 7630 Jeannette Street in May of 1990 in accordance with standard surveying procedures and that they prepared a written drawing of the survey.

. We note that Dr. Ensenat had this work performed while the Edgecombes were out of town, which supports the finding that he was in bad faith.