JaGOTHARD, Judge.
This is a property dispute between two neighbors in Lafitte. Plaintiffs, Patricia and Edward Cantrelle, Sr., began the action by filing suit in Jefferson Parish District Court seeking damages and injunctive relief. In the petition, the Cantrelles assert that defendants herein, Danny P. Gaude and Numa Marie Melancon, are trespassing on, and have blocked access to, a portion of plaintiffs’ property causing damage and destruction to the property. In a first supplemental and amending petition, Robert Gaude is added as a party defendant. In a second supplemental and amending petition plaintiffs make an additional claim for damages. In a third supplemental and amending petition, plaintiffs assert their ownership of the property by virtue of an act of sale dated September 21, 1990, Jefferson Parish Ordinance # 2934 adopted November 2, 1955, and through acquisitive prescription of ten and/or thirty years.
^Defendants, Danny Gaude and Numa Me-lancon, filed an answer and reconventional *525 demand in which they assert that the property in question is public property and seek damages for wrongful issuance of injunctive relief. Defendants, Danny Gaude and Numa Melaneon, also filed a- third party demand against the Jefferson Parish Council and the Parish of Jefferson seeking to have Jefferson Parish ordinance # 2934, concerning the property at issue herein and relied upon by plaintiffs, declared invalid. The reeonven-tional demand was subsequently amended to add Felix Alexie, an adjacent land .owner to the rear of the Gaude/Melancon property, as a defendant. Mr. Alexie was added as a defendant in plaintiffs’ reconventional demand by a subsequent pleading.
A temporary restraining order was issued on June 1, 1994 restraining defendants from trespassing on, damaging, and blocking access to plaintiffs’ property as contained in the property description. After a hearing on September 18, 1995, the trial .court issued an order dissolving those previous injunctions[1], and issuing a permanent injunction prohibiting all parties from any form of physical, mental, or emotional abuse or harassment. After a trial on the merits, the trial court rendered a judgment on July 9, 1996 which decreed that, “the plaintiffs and the defendants are entitled to one-half of-the original Upperline Street, or 20’ each.” On September 5, 1996 the court rendered an amended judgment which decreed that, “the plaintiffs and the defendants are entitled to one-half each of the disputed strip of land (the alleyway) in question.” In the reasons for judgment the trial court explained that the measurement in the original judgment of 20’ is an incorrect dimension of the property divided by the judgment. Both plaintiffs and defendants have filed.appeals.
| ¿Evidence contained in the record shows that the property in question abuts Bayou Barataría. Shell Road runs roughly parallel to the bayou at the opposite end of plaintiffs’ property, about 195 feet away from the bayou. Upperline Street, which intersects Shell Road and runs to Bayou Barataría, was dedicated as a public, forty-foot roadway by the original owner of the property, Isidore Fisher, in 1913. Levee Road, which runs along the bayou, begins at Upperline Street. At that time lot 768 ran 195 feet in length from Shell Road to Levee Road immediately adjacent to Upperline Street on the southwest side. (Appendix A). That portion of the proposed Upperline Street plotted to run along, lot 768 from Shell Road to Levee Road was never constructed. Isidore Fisher owned all of the property which bounded the proposed portion of Upperline Street on the southwest side and much of the property on the northeast side. Arthur Pizanni, an ancestor in title to Mr. Gaude and Mr. Melan-con, also owned a strip of property on the northeast side of Upperline Street. His property fronted Bayou Barataría because ■Levee Road does not cross Upperline Street.
The record also contains a survey of the area done in 1953 by Civil Engineer, H.E. Landry, which shows the heirs of Isidore Fisher re-subdivided the land at that time. In that survey Lot 1, which ran from Shell Road to Levee Road and measured 31 feet in width and 195 feet in length, was created out of a portion of former lot 768 and a portion of Upperline Street. There is no explanation in that plan for the encroachment onto Upper-line Street. (Appendix B).
In 1955, Jefferson Parish executed ordinance # 2934 which closed that part of Up-perline Street “commencing at its southeastern intersection with the Shell Road, as shown on said [1953] plan, and ending at its northwestern intersection with the ^Public Levee and Road, also set out on the said [1953] plan, on the ground that same has actually been abandoned and is no longer needed for public use”. That ordinance was never recorded in the Jefferson Parish records.
In 1975, Robert Gaude purchased land fronting Bayou Barataría on the opposite side of the former Upperline Street from Lot 1 of the Fisher subdivision on land formerly owned by the Pizannis. In 1976, Mr. Gaude sold a one-half interest in the property to his father-in-law, Numa Melaneon. The Gaude/Melancon property fronts on Bayou Barataría and does not extend to Shell Road. *526 It originally measured 40 feet in width and ran 125 feet in length from Bayou Barataría to property owned by Vincent Alexis in the rear, which fronts on Shell Road. To provide Mr. Alexis with access to the Bayou, there is a four-foot right of passage reserved on the Gaude/Melancon property which runs the entire length of the property reducing the width to 36 feet.
In 1982 the Fisher heirs sold to Carmela Sehieffler, by quitclaim deed, Lot 1 and;
all of that portion of land which formerly constituted Upperline Street abutting Lot No. One (1) but which was retroceded to the owners of Lot No. One (1) by ordinance No. 2934 adopted by the Jefferson Parish Police Jury, November 2, 1995, closing that part of Upperline Street or Public Road situated in Barataría in the Isidore Fisher Subdivision # 1, commencing at its Southeastern intersection with the Western line of the Shell Road, and extending from that point to its intersection with the line of the public levee or road fronting on Bayou Barataría, all of the above as shown on map of H.E. Landry, Civil Engineer, dated November 4, 1953, having been actually abandoned and no longer needed for public use as a public road.
In 1990 Mrs. Sehieffler sold the above property to her daughter and son-in-law, Patricia Sehieffler and Edward Cantrelle, Sr., plaintiffs herein. Lot 1, as |6subdivided in 1953, was 31 feet wide by 195 feet long. A survey of the Cantrelles’ property done in 1993 shows that the property now measures 38.73’ fronting Shell Road, 195.60’ along the former Upperline Street side, 45.40’ along the levee road, and 195’ abutting Lot 2. (Appendix C). Thus, it appears that all of the former Upperline Street was included in the sale from the Fisher heirs to Sehieffler. However, it appears that the Cantrelles only fenced the area subdivided as the original Lot 1 leaving the excess of the former Up-perline Street, a strip of about 7 feet, open. Defendants have fenced their property up to the property line, thus creating the alleyway between the two adjacent properties. It is that alleyway which is the focus of this action.
It appears that both parties used and maintained the alleyway by cutting the grass until sometime in 1994 when Mr. Cantrelle blocked off the alleyway with a chain and no trespassing signs. He stated that his intent was to prevent motorcyclists from using it as an egress from Levee Road which ended at that point. That action apparently caused friction between the neighbors and the Can-trelles filed this suit to establish ownership of the alleyway. After a trial on the merits, the trial court divided the disputed land in half, giving each party 3¡é feet of the alleyway.
In the dispute over the alleyway, the Can-trelles claim ownership. They argue that the 1955 ordinance abandoning a portion of Up-perline Street is valid; therefore, the act of sale transferring the property to their ancestor in title, Mrs. Sehieffler, is definitive of ownership. They further argue that the entire width of former Upperline Street from Shell Road to the bayou, including the alleyway, was acquired by them in 1982 by virtue of the act of sale from Mrs. Sehieffler. In the ^alternative, they argue that they acquired. the entire portion of former Upperline Street, including the alleyway, by acquisitive prescription.
The defendants argue the ordinance was invalid and without effect since it was never recorded in the parish records. Therefore, the alleyway is public property, which they are entitled to use, and not the private property of the Cantrelles.
In order to resolve this dispute, we must first consider the validity of the 1955 ordinance. LSA-R.S. 48:701 provides:
The parish governing authorities and municipal corporations of the state, except the parish of Orleans, may revoke and set aside the dedication of all roads, streets, and alleyways laid out and dedicated to public use within the respective limits, when the roads, streets, and alleyways have been abandoned or are no longer needed for public purposes.
Upon such revocation, all of the soil covered by and embraced in the roads, streets, or alleyways up to the center line thereof, shall revert to the then present *527 owner or owners of the land contiguous thereto.
Nothing in this Section shall be construed as repealing any of the provisions of special statutes or charters of incorporated municipalities granting the right to close or alter roads or streets.
Recently the Louisiana Supreme Court has ruled that a formal act is necessary to revoke a statutorily dedicated public roadway. State Dept. of Transp. v. Scramuzza, 96-1796, 96-1820, 692 So.2d 1024 (La.4/8/97). The ordinance in question meets that requirement and evidences a determination by the police jury that the roadway is no longer needed for public purposes. Such a determination will not be disturbed absent an abuse of discretion. Caz-Perk Realty, Inc. v. Police Jury of Parish of East Baton Rouge, 207 La. 796, 22 So.2d 121, 122 (1945). Because no showing of 18an abuse of discretion has been made, we find that the ordinance in question effectively declared the road to be abandoned. That section of the roadway, although dedicated in 1913 as a public road by the owners of the land, was never actually constructed and was formally abandoned by parish ordinance in 1955.
We are not persuaded by defendants’ argument that the failure to record the ordinance renders it invalid. Such failure speaks to its effect on third parties, not its validity. We recognize that the failure to record the ordinance in the parish conveyance office may not adversely affect the rights of third parties who rely to their detriment on public records. Martin v. Fuller, on rehearing, 214 La. 404, 37 So.2d 851 (1948). However, we do not find any such detrimental reliance in this case. On the contrary, should we invalidate the ordinance, the third party purchaser who relied on the ordinance for ownership would be harmed.
Normally, by operation .of law, property abandoned in such a way would be divided equally between the contiguous land owners, giving the ancestors in title to both the plaintiffs and the defendants each 20 feet of the proposed roadway. LSA-R.S. 48:701. However, in this case it appears that the entire 40 feet was claimed by the plaintiffs’ ancestors in title, the Fishers, who owned the property before it was subdivided. There is no indication in the record that anyone disputed that claim until the dispute over the alleyway at issue herein developed among the parties to this suit.
The ordinance revoking the dedication of the public road changed the character of the land from public to private property subject to acquisitive prescription pursuant to LSA-C.C. art. 3485. Therefore, we find no relevance in defendants’ argument that public land is not amenable to acquisitive prescription. 19The issue is not whether the plaintiffs have acquired ownership of a forty-foot public roadway from the parish, but rather whether they have acquired ownership of a twenty-foot strip of land belonging to the contiguous land owner upon the abandonment of the public road.
LSA-C1C. art. 3473 provides that “ownership and other real rights in immovables may be acquired by the prescription of ten years”. Pursuant to LSA-C.C. art. 3475, the possessor can acquire ownership of immovable property after possession for ten years by proving that he: 1) was in possession for ten years, 2) in good faith, 3) with just title, 4) of a thing susceptible of acquisitive prescription. O’Donnell, Inc. v. Parish of Jefferson, 94-154 (La.App. 5 Cir. 6/28/94), 641 So.2d 580; writ den. 94-2533(La.12/9/94), 647 So.2d 1120.
POSSESSION
Possession for purposes of acquisitive prescription must be “continuous, uninterrupted, peaceable, public and unequivocal”. LSA-C.C. art. 3476. With the exception of the alleyway, possession of the abandoned roadway by the Cantrelles is not disputed by the defendants. The area is fenced and used exclusively by Mrs. Sehieffler and the Can-trelles. Evidence in the record shows that the possessor has been in peaceful possession of the property the entire time since the purchase of the property in 1982, with the exception of a period of about six months in which Mrs. Sehieffler was too ill to live alone.
When one possesses under just title, possession as to any part of the immovable constitutes constructive possession as to those parts under such title that have not *528 been actually possessed. LSA-C.C. art. 3426; Harry Bourg Corp. v. Punch, 94-1557 (La.App. 1 Cir. 4/7/95), 653 So.2d 1322. Thus, even though the |i0alleyway has not been fenced, it has been constructively possessed by virtue of its inclusion in the title and the evidence that Mrs. Sehieffler helped to maintain the alleyway as long as her health permitted.
JUST TITLE
LSA-C.C. art. 3483 provides:
A just title is a juridical act, such as a sale, exchange, or donation, sufficient to transfer ownership or another real right. The act must be written, valid in form, and filed for registry in the conveyance records of the parish in which the immovable is situated.
A title is just for purposes of acquisitive prescription when the deed is regular in form, is valid on its face, and would convey the property if executed by the owner. O’Brien v. Alcus Lands Partnership Trust, 577 So.2d 1094, 1097 (La.App. 1st Cir.1991). The title relied upon by one seeking to establish ten year acquisitive prescription must sufficiently describe the property so as to transfer its ownership. One must be able to identify and locate the property from the description in the deed itself or from other evidence which appears in the public records. Id.; Harry Bourg Corp. v. Punch, supra. This is necessary because one cannot by the prescription of ten years acquire property not embraced within the title upon which the plea of prescription is founded. Honeycutt v. Bourg, 588 So.2d 1204, 1207 (La.App. 1 Cir.1991); Ensenat v. Edgecombe, 95-0641, 95-0642 (La.App. 4 Cir. 5/15/96), 677 So.2d 138, 143.
The facts show that in 1982 the heirs of the original owner of the property sold, by quit claim deed to plaintiffs’ ancestor in title, immovable property which included Lot One and;
“all that portion of land which formerly constituted Upperline Street abutting said Lot No. One (1) but which | nwas retroced-ed to the owners of said Lot No. One (1) by ordinance No. 2934 adopted by the Jefferson Parish Police Jury, November 2, 1995, closing that part of Upperline Street or Public Road situated in Barataría in the Isidore Fisher Subdivision # 1”.
Thus, the quit claim deed is translative of title of the entire abandoned roadway including the alleyway at issue herein. Because title to the entire area vested in Mrs. Sehief-fler, it was transferred to the Cantrelles in the 1990 transfer.
GOOD FAITH
The next issue for our consideration is whether plaintiffs are good faith possessors. Good faith is presumed by operation of LSA-C.C. art. 3481. LSA-C.C. art. 3480 defines good faith necessary for ten year acquisitive prescription as follows:
For purposes of acquisitive prescription, a possessor is in good faith when he reasonably believes, in light of objective considerations, that he is owner of the thing he possesses.
That article became effective January 1, 1983, and is a codification of prevailing jurisprudence which provided that good faith of the possessor should be determined in light of objective considerations. Phillips v. Parker, 483 So.2d 972 (La.1986). While the transference of property by quit claim deed may be suggestive of knowledge of title defects which may rebut the presumed good faith of the purchaser, it is not conclusive. The age and nature of the title defect, and other such factors bearing on the likelihood of discovery, are also relevant to the determination. Id.
The contiguous property owner was entitled to one-half of the revoked roadway at the time of abandonment of Upperline Street in 1955, by operation of law. LSA-R.S. 48:701. Thus the defect, inclusion in the title of the contiguous 112property owner’s 20 feet of retroceded property, is not readily obvious as evidenced by the fact that even the property owner whose rights were originally infringed upon was apparently unaware of the infringement. Further, the property was purchased by Mrs. Sehieffler, a widow who was unable to read or write. Mrs. Sehieffler lived on the property until some time in 1989, when she was unable to continue living alone. *529 Shortly afterward she transferred ownership of the property to her daughter and son-in-law, the Cantrelles. It appears that no title examination was made in either transfer. We find no evidence in the record which successfully rebuts the presumption of good faith afforded the titled owners by article 3481. Under these circumstances we find that the plaintiffs and their ancestor in title were in good faith for purposes of acquisitive prescription.
Considering the evidence presented and the applicable law, we find that the Cantrelles are the legal owners of the entire property described in the title filed in the parish records, including the alleyway at issue herein. However, our inquiry does not end at that determination. For the following reasons, we find that a predial servitude exists on the alleyway in favor of the defendants.
Defendants are entitled to a right of passage over the alleyway. The owner of an estate who has no access to a public road may claim a right of passage over neighboring property to the nearest road. LSA-C.C. art. 689. Before a servitude of passage is owed from one estate to another, it must be shown that the property is enclosed and that the right of passage sought is generally taken on the side where the distance is shortest from the enclosed estate to the public road. LSA-C.C. arts. 689, 692; Bulliard v. Delahoussaye, 481 So.2d 747 (La.App. 3 Cir.1985). The | fright of passage for the benefit of an enclosed estate shall be suitable for the kind of traffic that is reasonably necessary for the use of that estate. LSA-C.C. art. 690.
Mr. Melancon testified that since the Can-trelles blocked off the alleyway he has no access to his property by land; and that fact was established from the plans of the area submitted to the court. The Gaude/Melan-con property fronts Bayou Barataría and does not extend to Shell Road. The only other road near the property is the Levee Road running along Bayou Barataría which ends at the edge of the Cantrelles’ property. However, a levee separates the end of that road from the Melancon/Gaude property. Mr. Melancon stated that it is necessary for him to park the car on Shell Road and walk, carrying groceries or other supplies down the alleyway to his home. He further testified that his wife, who suffers from Alzheimer’s disease, has tripped and fallen several times on chains blocking passage on the alleyway. Further, there is sufficient evidence to show that Mrs. Schieffler allowed the defendants and the general public to use the alleyway. The area was not fenced and the trial court found that the defendants actually did most of the maintenance on the alleyway. Under these circumstances we find that the defendants are entitled to á predial servitude to the entire alleyway.
For the foregoing reasons, we find that the trial court erred in ruling that the plaintiffs owned only one-half of the alleyway. We hold that plaintiffs are entitled to ownership of the entire alleyway subject to a predial servitude held by the defendants.
Defendants have also appealed the judgment. In brief to this court, defendants request an award for damages for unlawful issuance of injunction. Because there has been no showing of actual damages sustained, we are not inclined | uto award such damages. It is the burden of the plaintiff-in-reconvention to prove the damage he suffered as a result of defendant’s fault, and to support an award there must be evidence in the record. Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081 (La.1983). No such evidence exists in this record. Therefore, we find no error in the trial court’s failure to award the damages sought.
Defendants further ask that this court condemn plaintiffs to pay all costs of proceedings in both the trial court and this court. Because we find valid legal arguments on both sides, we order each party to bear his own trial and appeal costs.
JUDGMENT REVERSED IN PART, AFFIRMED IN PART AND AMENDED.
*530 APPENDIX A
[[Image here]]
*531 APPENDIX B
[[Image here]]
*532 APPENDIX C
[[Image here]]

. It is not clear from the record if injunctive relief was granted or if the dissolution refers to the temporary restraining order granted on June 1, 1994.