J^FOIL, J.
We are asked to review a trial court’s determination that ownership of a parcel of immovable property was acquired by ten years acquisitive prescription. We reverse.
BACKGROUND
The only issue in this case is the ownership of Lot 169 located in a Denham Springs mobile home subdivision. Most of the facts have been stipulated to by the parties at trial or in their post-trial memo-randa, and are not in dispute.
On July 24, 1987, Collin McClendon purchased a lot in the subdivision from Celia Ladd. The act of sale conveyed the following described property:
A certain lot or parcel of ground, together with all the buildings and improvements thereon, situated in that subdivision of the Parish of Livingston, State of Louisiana, known as EASTOVER MO- • BILE ESTATES, FIRST FILING, and being designated on the official plat thereof prepared by E.E. Evans & Associates, Inc., C.E., dated September 20, 1972, and recorded in Conveyance Book 179, Entry No. 94458, Official Records of Livingston Parish, Louisiana, as LOT NUMBER ONE HUNDRED SEVENTY (170), said Eastover Mobile Estates Subdivision, and having such dimensions and measurements as shown on said plat.
The act of sale further states that the municipal address of the property is “8744 Cheyenne Avenue, Denham Springs, La.,” which is actually the address for the neighboring Lot 169.
In connection with the lot purchase, Collin McClendon’s son, Jack, purchased the trailer Mrs. Ladd had been residing in and moved in soon thereafter. In August of 1995, Collin McClendon attempted to sell his lot and learned he was in possession of Lot 169, not Lot 170 as described in his deed. The McClendons investigated and discovered that several of their neighbors were occupying lots they did not have record ownership of, and they notified their neighbors of the mix-up regarding the lot numbers. Specifically, they learned that Susan Thomas was in possession of Lot 168 but had a deed transferring Lot 169 to her; Earnest Miller was occupying Lot 167 but had a deed transferring Lot 168 to him; and Jimmy Harris was occupying lot 170, although his deed referenced Lot 171.
laCollin McClendon hired a title attorney, who prepared an act of correction in which the four lot owners and the original subdivision developers were to transfer all of their interest in the lot described in their titles to the owner in actual possession of the lots. This document was never perfected.
Instead, Susan Thomas, whose mother was living in a trailer on Lot 168, sent a certified letter to the McClendons advising them she would be charging a rental fee of $125.00 per month as long as they lived on Lot 169. She also filed a rule for eviction against the McClendons, which was later dismissed.
This litigation originated as a possessory action filed by the McClendons against Susan Thomas and her husband in which they sought damages for disturbance of their possession of Lot 169. The Thom-ases answered the lawsuit and filed a re-conventional demand seeking to be declared the owners of Lot 169. The McClendons also claimed ownership of Lot 169 by either title or acquisitive prescription of ten years.
Both sets of parties traced their titles to a common ancestor, Mobile Home/Modular Home Development Company d/b/a East-over Mobile Estates (Mobile Home). Collin McClendon’s chain of title is as follows: *264 On February 28, 1978, Mobile Home sold a number of lots to Pat Ru, Inc. This act of sale did not include Lot 169, but did include Lot 170. By act of sale dated February 8, 1979, Pat Ru, Inc. sold a lot depicted therein as Lot 170 to Celia Ladd. However, on September 8, 1981, an act of correction was filed in the Livingston Parish conveyance records changing the lot number from 170 to 169. The act of sale from Celia Ladd to Collin McClendon dated July 24, 1987 describes the property conveyed as Lot 170 but lists the municipal address for Lot 169, and fails to mention the 1981 act of correction.
Susan Thomas’s chain of title began with the sale of Lot 169 from Mobile Home to Kevin and Melissa Peterson by an undated deed filed in the conveyance records on November 16, 1977. The Petersons sold Lot 169 to the Durnins by an act of sale dated July 24, 1980. On April 29, 1994, the Durnins sold Lot 169 to Susan Thomas.
|4When the titles of the parties are traced to a common author, he is presumed to be the previous owner. La.Code Civ. P. art. 3658. Both parties attempted to trace their title to Mobile Home, which is presumed to be the previous owner of Lot 169. The evidence establishes that Mobile Home transferred ownership of Lot 169 to Susan Thomas’s ancestor in title. As the trial court correctly observed, Susan Thomas proved an unbroken chain of title to Lot 169. Because Susan Thomas proved title to the disputed lot, the McClendons could only have acquired ownership of Lot 169 by acquisitive prescription.
The requisites for acquisitive prescription of ten years are: (1) possession for ten years; (2) good faith (3) just title and (4) a thing susceptible of acquisition by prescription. La. Civ.Code art. 3475. By pleading acquisitive prescription, the McClendons had the burden of proving these elements. La. Civ.Code art. 3483; Harry Bourg Corporation v. Punch, 94-1557, p. 4 (La.App. 1 Cir. 4/7/95), 653 So.2d 1322, 1324.
In addition to good faith and actual possession, the title serving as the basis for a plea of acquisitive prescription must be one translative of property. Rawlings v. Stokes, 194 La. 206, 216, 193 So. 589, 592 (1940). A title is just for the purpose of acquisitive prescription when the deed is regular in form, valid on its face, and would convey the property if executed by the owner. La. Civ.Code art. 3483; Harry Bourg Corporation v. Punch, 94-1557 at 4, 653 So.2d at 1325.
For a deed to be translative of title to real estate, it must contain such a description as to properly identify the property so as to transfer its ownership. Wilson v. Head, 97-992, p. 3 (La.App. 3 Cir. 2/4/98), 707 So.2d 127, 128. It is not sufficient that the description in the deed might be construed to transfer the property. Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225, 236 (1947). Rather, one must be able to identify and locate the property from the description in the deed itself or from other evidence appearing in the public records. Harry Bourg Corporation v. Punch, 94-1557 at 4, 653 So.2d at 1325.
| BIn the execution of deeds, the intention of the parties must be gathered from an inspection of the instrument itself, without the aid of extrinsic evidence, if their intentions can be ascertained. If the description is so ambiguous as to leave doubt as to the parties intent, extrinsic evidence may be resorted to as an aid in construction. Robinette v. Myers, 510 So.2d 1332, 1335 (La.App. 3 Cir.1987). See also, Citizens National Bank v. National Union Fire Insurance Company, 597 So.2d 1130, 1131 (La.App. 1 Cir.1992).
Although extrinsic evidence may be resorted to where there is an ambiguity in the property description, it is well settled that where property is described in reference to an attached plat, the plat controls in the event of a discrepancy in *265 description between the worded description and the plat. Citizens National Bank v. National Union Fire Insurance Company, 597 So.2d at 1131. The deed under review specifies Lot 170 as the property sold and describes that lot in reference to a plat filed in the public records. That plat, which was incorporated into the property description by reference, clearly identifies Lot 170 and gives the dimensions of the lot. The location of the lot is easily ascertainable from the public records. Any discrepancy in the property description results from the inclusion of the municipal address for Lot 169 in the act of sale. By finding the McClendons had just title to Lot 169, the trial court effectively allowed the municipal address of Lot 169 to override the plat and control the property description. However, because the plat controlled the property description, the deed can only be construed to convey title to Lot 170.
Furthermore, we find that the 1981 act of correction does not give Collin McClendon just title to Lot 169. There was no mention of the act of correction in the McClendon deed. Furthermore, the McClendon deed specifically transfers Lot 170. As noted earlier, it is not sufficient the document might be construed to convey Lot 169 to Collin McClendon. To serve as just title to Lot 169, that document had to describe and identify Lot 169 as the property being transferred with clarity. Clearly, under the circumstances of this case, the McClendon deed does not meet this basic requirement.
|fiFor the above reasons, we hold the trial court erred in finding the McClen-dons sustained their burden of proving they acquired Lot 169 by acquisitive prescription. We further find that Susan Thomas proved an unbroken chain of title to Lot 169 from the common ancestor in title and therefore conclude she sustained her burden of proving she acquired ownership of Lot 169 by title.
CONCLUSION
For the foregoing reasons, we reverse the judgment and hereby enter judgment decreeing that Susan Thomas is the owner of Lot 169 in Eastover Mobile Estates. That portion of the judgment awarding damages to plaintiffs is also reversed. All costs of this appeal are assessed to appel-lees.
REVERSED AND RENDERED.
FITZSIMMONS, J., concurs, and assigns reasons.