FOURNET, Justice.
 

 The Police Jury of East Baton Rouge Parish is appealing from a judgment enjoining the promulgation and enforcement of an ordinance adopted by it on August 11, 1942, revoking the dedication of and ordering closed a certain street in a suburban subdivision of Baton Rouge. Joining in the appeal are Mr. and Mrs. Amos K. Gordon, who were enjoined in this same judgment from obstructing any portion of the street in question.
 

 In 1920 Caz-Perk Realty, Inc., owners .of a large tract of land adjoining the city of Baton Rouge, opened the area as a residential section, laying out streets or roads and subdividing the lots abutting thereon for sale. A survéy of the subdivision was recorded on February 8, 1921, ■ for the purpose of dedicating the streets or roads shown therein. for public use. ' The' area was designated the Zee Zee Gar- : dens. A swampy area adjacent to and form- ' ing the western boundary, of this subdivision • was donated to the city by the realty com- ■ pany -for conversion into an. artificial lake, the 'city agreeing .to build a..paved drive.
 
 *799
 
 way along the shore thereof. Until the extension of Fiero street from the point of its intersection with the street in controversy to this lakeshore drive in 1933, the area forming the Zee Zee Gardens had no immediate or direct means of ingress to or egress from this lakeshore drive, for none of its streets connected therewith. Situated approximately 300 feet to the east of this lakeshore drive and paralleling its general contours, is the street herein sought to be closed. This street originally ran northward from what is now Fiero street for about 900 feet, but its length was reduced to 600 feet in 1933 when its northern end above Kalurah street (also referred to as Baywood Avenue) was officially closed by the Police Jury upon the application of the realty company. The lots abutting on both sides of this street at the northern or closed end, including the closed portion, were subsequently sold as one large tract to the Sisters of St. Joseph for the construction of a convent, but this tract was re-acquired by the realty company from the Sisters in 1941 and it now forms a part of a new subdivision that has been carved from the northern portion of the original Zee Zee Gardens tract, being developed at present by the realty company as the “Hillsdale” subdivision.
 

 The Gordons, owners of all of the lots on both sides of the street in controversy, with the exception of Lot No. 70 (fronting on Lakeshore Drive and abutting on the western side of the street in controversy and- also forming a part of the Hillsdale subdivision), alleging that the street was unnamed, unused, and useless, filed a written application with the Police Jury of East Baton Rouge Parish asking that the street be formally closed. When the Police Jury met on July 14, 1942, to consider this application, the street’s closure was opposed by the realty company and by Mr. and Mrs. Joseph C. Baddock, owners of a home located on Kalurah street (also referred to as Baywood Avenue), into which street the street in controversy runs at its northern end. Whereupon the Police Jury appointed a committee of five of its members to investigate the matter and upon its recommendation and report the Police Jury, at its meeting on August 11, 1942, by a unanimous vote (the president not voting) adopted the ordinance revoking the dedication of this street and ordering it closed that is now under attack.
 

 Following the adoption of this ordinance, the Gordons immediately closed the street by placing wooden posts in the space where it intersected Fiero street. Two days later the realty company and the Baddocks instituted these proceedings seeking to have the^promulgation of the ordinance and the obstruction of the street enjoined.
 

 On the return day, and in response to the rule to show cause why a preliminary injunction should not issue, the Police Jury and the Gordons excepted to the petition on the ground that it disclosed neither a cause nor a right of action and answered. Referring these exceptions to the merits, the judge, on the trial of the rule, concluded that a preponderance of the evidence established the fact that the “Police Jury erred when they concluded that the road sought to be closed is no longer use
 
 *801
 
 ful for public purposes,” and granted a preliminary injunction. It is from this judgment that the Police Jury and the Gordons prosecute this appeal.
 

 The Police Jury's authority to close the street is based on the provisions of Act 151 of 1910 and Act 382 of 1938. The pertinent provisions of the act of 1938 are almost identical with those of the former and it was ostensibly adopted for the purpose of correcting an error in the title of the former act, as well as to confirm titles to the streets that had been formally abandoned under the 1910 act. Section 1 of the 1938 act reads as follows: “* * * the Police Juries and municipal corporations of this State (Parish of Orleans excepted) shall have full power and authority, in their discretion, to revoke and set aside the dedication of all roads, streets and alleyways laid out and dedicated to public use within their respective limits, when such roads, streets and alleyways have been abandoned or are no longer needed for public purposes.”
 

 It is the contention of the appellees, as stated in their brief, that under the provisions of these acts “The discretion granted the Police Jury by the Statute is to close or not close roads which have been abandoned, as a matter of fact, and are no longer needed for public purposes. If the road has not been abandoned or is of some public use a Police Jury has no authority and no discretion to exercise and cannot arbitrarily close a public road. Before the discretion allowed to a Police Jury comes into play or may be exercised it must first be shown and proven that the road has been actually abandoned and is no longer of any public use, and the Jury is not the sole and final judge of this question of fact. The authority of final determination of the question is vested in the courts.”
 

 The appellants, on the other hand, take the reverse position, contending that the Police Jury, having found as a fact that this street was abandoned, is of no use to the public, and ordering it closed, under the full power and authority granted it by these acts, the trial judge was without right or authority to substitute his opinion and discretion for a matter so exclusively within the province of the Police Jury unless he found that such body had acted arbitrarily or capriciously.
 

 The trial judge, in disposing of this issue, said in his opinion: “My interpretation thereof [Acts 151 of 1910 and 382 of 1938] is that the discretion given police juries therein is to close or keep open any road admittedly abandoned and no longer useful for public purposes. * * * They do not however, have the last word as to-whether a road has,
 
 as a matter of fact,
 
 been abandoned and is no longer useful for public purposes.” As otherwise expressed by him, it was his opinion that “sound, discretion is given these bodies to determine whether the dedication should be revoked and not the right to say that a road that is still useful for public purposes, is no longer-useful for such purpose.” (Brackets ours.)
 

 The provisions of these acts have been before this court for consideration on several occasions. Jaenke v. Taylor, 160 La. 109, 106 So. 711; Metairie Park v. Cur
 
 *803
 
 rie, 168 La. 588, 122 So. 859; Arkansas-Louisiana Gas Co. v. Parker Oil Co., 190 La. 957, 183 So. 229. In the Currie case •an objection was raised to the title to certain real estate in Metairie, a subdivision ■of New Orleans lying in the adjacent parish of Jefferson, because the dedication of certain streets within the tract that had been formally dedicated had been revoked and abandoned by the Police Jury because of their nonuse by the abutting owners and the public. It was the defendants contention that such a revocation constituted a ■cloud on the title. In disposing of this ■contention and pointing out that it was without merit since the streets had been ■officially closed by the Police Jury of Jefferson Parish under the-express provisions of Act 151 of 1910, this court said [168 La. 588, 122 So. 861]:
 

 “The police jury, acting within the discretion confided it by the Legislature, found as a fact that the streets dedicated in the Zander plan ‘have never been opened’ ; that ‘the tract in question is still a field, barren of improvements’; and ‘the .streets in question
 
 are not needed for any public purpose.’
 

 “The police jury having exercised its sound discretion in the premises, and having acted within the scope of the police power lawfully delegated to it by the Legislature, defendant is without right to question such action, in our opinion. * * * Of necessity there must be some final action in such matters, and some final authority to act, and the Legislature has seen fit to confer such jurisdiction upon the police juries and municipalities of the state, to be exercised within a sound discretion.”
 

 But counsel for appellees argue that these cases are not controlling or pertinent here because the court was ■ dealing with cases involving title to the streets after the official abandonment and closing thereof was an accomplished fact, no issue having been taken with the action of the political body in closing the same; consequently, that this fact, when considered in connection with the historical background of this legislation, will show that the Legislature in enacting Act 151 of 1910 and Act 382 of 1938 limited the discretion of these governing authorities to the right to close or not to close streets that were
 
 admittedly
 
 unused or abandoned. In support of this argument counsel point out that when subdivisions or surburban properties throughout the state first became important the Legislature adopted its Act 134 of 1896 requiring the owners of real estate desiring to develop their property to formally dedicate all of the streets, roads, alleys, and public squares within the areas to public use, such dedication to be reflected by the recordation of a plat showing the area as subdivided. Prior to the adoption of this legislation, the owner became di- . vested of his title to and control over these streets and alleys and they became dedicated to the public only after the lots abutting thereon had been sold or the roadways had become public thoroughfares by actual use. The Legislature of 1910 adopted its Act 151 providing for the revocation of such dedications when abandoned or no longer 'needed for public use, vesting the
 
 *805
 
 soil “embraced, in such roads, streets, and alley-ways up to the center line thereof” in the present owner or owners of the land contiguous thereto, obviously to clarify and clear the titles to the dedicated property in such subdivisions when it was not developed or the streets as laid out proved to be of no use to the developers.
 

 While it may be true that the development of these suburban subdivisions was largely instrumental in the adoption of this legislation, we think counsel are in error in their views for prior to the adoption of Act 151 of 1910 the police juries had plenary power over the establishment and discontinuance of all roads within their respective limits (Sections 2743, 2750, and 3364 of the Revised Statutes of 1870; Section 6405 of Dart’s General Statutes; King v. Police Jury, 12 La.Ann. 858; Hunsicker v. Briscoe, 12 La.Ann. 169, 170; St. Joseph Plank Road Co. v. Kline, 106 La. 325, 30 So. 854; Reynaud v. Police Jury, 138 La. 66, 70 So. 39), and the acts of 1910 and 1938 are not limited as contended by counsel but apply specifically “to all roads, streets, and alleyways laid out and dedicated to public use, within the respective limits of the police juries and municipal corporations” of the state, the only limitation placed on the power thus delegated to the police juries being that the streets can only be closed when abandoned or no longer needed for public purposes.
 

 It is our opinion, therefore, that when the Legislature delegated to the police juries and municipal corporations of this state full power and authority over the revocation of dedicated streets, roads, and alleyways that have been abandoned or are no longer needed for public purposes, it is necessarily within the scope of the police power thus delegated to these political bodies by the Legislature to look into and determine whether the street is an abandoned street or is no longer needed for public purposes and it is the well-settled jurisprudence that courts will not interfere with the functions of police juries or other public bodies in the exercise of the discretion vested in them unless such bodies abuse this power by acting capriciously or arbitrarily.
 

 Inasmuch, however, as the evidence ' in the record as made up consists largely of affidavits and exhibits offered by both sides and the trial judge concluded therefrom, as a fact, that “* * * the north and south road which defendants seek to have closed has been used very little since it was laid' out, it has been used some and perhaps would have been used more had it not been for the obstruction referred to by some of the witnesses (and) * * * while said road might now appear to be useless, it can, if the obstructions are moved be advantageously used by these plaintiffs and other property owners in the subdivision,” we cannot, say that he abused his discretion in issuing the preliminary injunction appealed from pending a hearing on the merits.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 O’NEILL, C. J., concurs in the decree.
 

 HIGGINS, J., takes no part.