907 So.2d 859 (2005)
James Bernard GATSON, Plaintiff-Appellant
v.
John BAILEY, Defendant-Appellee.
No. 39,835-CA.
Court of Appeal of Louisiana, Second Circuit.
June 29, 2005.
*860 Rick Lane Candler, for Appellant.
A. Shawn Alford, Farmerville, for Appellee.
Before CARAWAY, PEATROSS and DREW, JJ.
CARAWAY, J.
This case pits the policies allowing for the closure of public roads against those for the protection of enclosed estates. Following the abandonment of a rural parish road by formal act of the police jury in 1988, plaintiff's tract of land located at the end of the road was allegedly without access to a public road. The abandoned bed of the roadway ran through defendant's property, and the defendant placed gates at the points where the road entered and exited his land. This suit filed in 2002 claims that the abandoned public road should still serve as a servitude across defendant's property for access to the plaintiff's land. Alternatively, plaintiff claims that his property is an enclosed estate and that he is entitled to a right of passage through defendant's land pursuant to Louisiana Civil Code Article 689.[1] The trial court ruled that after the road's abandonment by the police jury, a servitude of passage no longer existed as a burden upon defendant's land providing plaintiff access through defendant's property to a public road. Regarding plaintiff's claim for establishment of a right of passage at the same or different location across the defendant's land under Article 689, the court found that the plaintiff had obtained access to a public road by "a precarious right of way resting on the sufferance" of the owners of other neighboring tracts. Plaintiff's request for any right of passage across defendant's property was denied. Finding that the servitude of the parish road remains extant for plaintiff's use, we now reverse the ruling of the trial court.

Facts
The defendant, John Bailey, is the owner of a ten-acre tract described as the Southwest Quarter of the Northeast Quarter of the Southeast Quarter of Section 10. He and his wife purchased the tract in 1986. The plaintiff, James Bernard Gatson, owns 130 acres of land which, though not contiguous, is within 660 feet of the Bailey tract, lying to the north and east. The closest portions of the Gatson tract to the Bailey tract are the Southeast Quarter of the Northeast Quarter of Section 10 and the Northwest Quarter of the Northwest Quarter of the Southwest Quarter of Section 11. (See copy of plat attached as Appendix I.)
Before 1988, a parish-maintained dirt and gravel road (hereinafter the "Old Road") traversed the Bailey tract from west to east and continued in a northeasterly direction across an adjacent tract (hereinafter the McMath tract), ending as a dead end road in the Gatson tract in Section 11. It is undisputed that the Old Road was a public road maintained by the parish police jury. It was the only access to a public road enjoyed by the Gatson 130-acre tract and before 1988 served occupants of a rural residence on the Gatson tract.
*861 After the house on the Gatson tract was sold and removed from the land, on August 9, 1988, the Union Parish Police Jury passed a resolution of abandonment of the Old Road for the portion beginning at a point on the west line of the Bailey tract and running "northeasterly approximately.4 miles to end of said road located in Sections 10 and 11, T23N, R1W, Ward 3." Shortly thereafter, Bailey began employing gates at the places where the Old Road entered and exited his land.
Immediately west of the place where the Old Road was abandoned on the west boundary of the Bailey tract is the intersection of two public roads. The first is an east to west road leading due west from the Bailey tract. The other road, which is referred to as the Honeycutt Road, runs south along the west boundary of the Bailey tract. This public road intersection at Bailey's west gate appears to be the nearest location of a public road available to the Gatson tract after the abandonment. Bailey testified that he measured the distance from that point northward along his western boundary and across the neighboring property to the southwest corner of the Gatson land in Section 10. The distance was found to be 1178 feet, and this is corroborated by a survey of the Bailey tract in the record which shows the Northeast Quarter of the Southeast Quarter of Section 10 as having a 1311.9-foot west boundary. If a new road is necessary pursuant to Civil Code Article 689, this route would apparently provide the Gatson tract with the nearest access to a public road.
Gatson acquired ownership of the Gatson tract in 1995 by purchase from the heirs of his uncle. He stated that he first visited the tract in 1993 as he began efforts to acquire the property. He accessed the property at that time by going through the gates on the Bailey tract. He discussed the use of the Old Road with Bailey, and before his purchase of the land, he also investigated through the police jury whether the abandonment of the Old Road might be revoked. He was told that he must reach an agreement for access with Bailey. Gatson did obtain a conventional servitude for that portion of the Old Road east of the Bailey tract traversing the McMath tract.
Bailey did not deny that he routinely allowed hunters and loggers after 1988 and Gatson after 1993 to travel across his tract along the Old Road to reach the Gatson or McMath properties to the northeast. He maintained the gates unlocked and required those parties to keep them closed. Bailey built his home on the ten-acre tract, and the Old Road now serves as his driveway but continues on to the east side of his property in its original path. Bailey also repeated more than once in his trial testimony that he would continue to allow Gatson to traverse his property so long as he opened and closed the gates.
In bringing this suit, Gatson seeks to re-establish his access to the public road west of the Bailey tract by use of the Old Road. Alternatively, he requested that the court establish a new right of passage pursuant to Civil Code Article 689 across the Bailey tract for his enclosed estate. After a bench trial, the trial court denied Gatson any relief. The court concluded that the Old Road across Bailey's land is no longer a public road, and Gatson has no existing servitude, public or otherwise, for access through the Bailey tract. Additionally, the trial court found that a legal servitude or right of passage for the Gatson tract was unnecessary because of Gatson's ability to access the Honeycutt Road south of the Bailey tract by an established, but non-public, dirt route extending along a power utility right-of-way through the McMath tract. The trial court therefore found, after *862 citing Robinson v. Herring, 20 So.2d 811 (La.App. 2d Cir.1944), that the Gatson tract was not enclosed since it had "access to a public road even by means of a precarious right-of-way resting on the sufferance of neighbors."
Gatson now appeals these rulings. He claims that even though the Old Road was no longer maintained by the police jury and was formally abandoned, the trial court erred in finding that no servitude could still remain along the Old Road for access to his land. Alternatively, he argues that the trial court erred in its determination that his property was not an enclosed estate. He asserts that the alternate route to the Honeycutt Road recognized by the trial court is impassable at times because of weather and that the trial court's judgment will cause his tract to forever be landlocked without further redress through the courts for a right of passage through the Bailey tract.

Discussion
The road abandonment statute upon which the Union Parish Police Jury acted is La. R.S. 48:701, which provides as follows:
The parish governing authorities and municipal corporations of the state, except the parish of Orleans, may revoke and set aside the dedication of all roads, streets, and alleyways laid out and dedicated to public use within the respective limits, when the roads, streets, and alleyways have been abandoned or are no longer needed for public purposes.
Upon such revocation, all of the soil covered by and embraced in the roads, streets, or alleyways up to the center line thereof, shall revert to the then present owner or owners of the land contiguous thereto.
Nothing in this Section shall be construed as repealing any of the provisions of special statutes or charters of incorporated municipalities granting the right to close or alter roads or streets.
This statutory authority provides no method of notice to the public or interested landowners of the proposed abandonment. Herring v. Guitreau, 619 So.2d 1161 (La.App. 1st Cir.1993). The record indicates that the proposal was advertised locally in Union Parish before the police jury's action. However, no direct notice of the proposed abandonment is shown to have been given to the owners of the Gatson tract in 1988.
This case presents the question regarding the rights of a landowner whose tract will no longer abut a publicly-maintained road because of a public body's proposal for abandonment of that road pursuant to La. R.S. 48:701. In the absence of the "precarious right-of-way" as determined by the trial court, the Gatson tract did become an enclosed estate if the police jury's action in 1988 ended the servitude rights for passage along the Old Road and immediately vested full ownership of the Old Road in Bailey. Yet, based upon the following review of the jurisprudence, we determine that such a result does not occur without the opportunity for judicial review of the abandonment action.
Initially, we determine from the evidence presented that the public maintenance of the Old Road prior to 1988 had vested in the public a right of use in the nature of a predial servitude for passage across the Bailey tract. La. C.C. art. 639, et seq.; La. R.S. 48:491. There is no evidence of a deed or recorded plat, vesting full ownership in the police jury. Therefore, such tacit dedication of the road created a right of use servitude. U.S. Silica Co. v. Wooldridge, 34,763 (La.App.2d Cir.10/31/01), 799 So.2d 693.
The courts have consistently recognized this tacit dedication for roads maintained *863 by a public authority, even when no general public purpose is served thereby, as when only one person or family utilizes the road as a driveway to his property. Porter v. Huckabay, 221 La. 120, 58 So.2d 731 (La.1952); Strickland v. Stafford, 322 So.2d 893 (La.App. 1st Cir.1975); Luneau v. Avoyelles Parish Police Jury, 196 So.2d 631 (La.App. 3d Cir.1967); Curtis v. Goebel, 101 So.2d 462 (La.App. 1st Cir.1958). In such cases, the tacitly-dedicated roads provide rights tantamount to actual predial servitudes protecting the dominant estate owners at the end of these roads, whose property might otherwise be enclosed.
The language of La. R.S. 48:701 arguably indicates that it applies only to dedicated roads or streets whose "soil" or full ownership is vested in the public under La. R.S. 33:5051 by recordation of a plat or by a title instrument in favor of a public authority. Hargrave, Developments in the Law  Property, 50 La. L.Rev. 353 (1989). However, in the absence of comprehensive legislation for this situation, the Louisiana courts have applied the statute and its standard for abandonment to tacitly-dedicated servitude roads. Id.
In disputes regarding abandonment, the jurisprudence has held that even after a police jury has in fact abandoned maintenance of a tacitly-dedicated road and refuses to recognize the road as public, the right of owners along the road to use the road as a servitude may be upheld. IP Timberlands Operating Co. v. DeSoto Parish Police Jury, 552 So.2d 605 (La.App. 2d Cir.1989); Fore v. Volentine, 385 So.2d 860 (La.App. 2d Cir. 1980); Latour v. Dupuis, 164 So.2d 620 (La.App. 3d Cir.1964). Also, the jurisprudence holds that a formal act of abandonment by a public authority can be revoked after its issuance by judicial review. American Sec. Bank of Ville Platte v. Rebokus, 527 So.2d 71 (La.App. 3d Cir.1988); Anderson v. Police Jury of Parish of East Feliciana, 452 So.2d 730 (La.App. 1st Cir.1984), writ denied, 457 So.2d 13 (La.1984); Luneau, supra. Such formal resolution, which is not expressly addressed in La. R.S. 48:701, does not therefore act in the manner of a deed to vest the unencumbered ownership of a street or road in a private party without the possibility for judicial review. Coliseum Square Ass'n v. City of New Orleans, 544 So.2d 351 (La.1989).
As to the issues of standing and joinder of parties, the above jurisprudence also allows a member of the public whose land is directly affected by the action of the public body to bring suit against either the public body, Luneau, supra, or another property owner who claims that the public right of use has ended and prevents its exercise. American Sec. Bank of Ville Platte, supra; Latour, supra; Bulliard v. Delahoussaye, 481 So.2d 747 (La.App. 3d Cir.1985). Thus, we do not find in this case that the Union Parish Police Jury was required to be joined in this action under La. C.C.P. art. 641, et seq., and the jurisprudence.
The judicial standard of review applicable for any dispute regarding an authority's termination of public use of a road or street was addressed by the Louisiana Supreme Court in Coliseum Square Ass'n v. New Orleans, supra. The case involved the closure by the city's abandonment resolution of one block of a street in New Orleans. As decided initially, the court revoked the street's closure placing emphasis on the status of a street as a public thing held by the political subdivision as a public trust. La. C.C. art. 450. From that principle, the court in its original opinion found that the street was inalienable. On rehearing, that view was reversed since neither the Constitution nor the Civil Code prohibits the closure of a street or road and its alienation for private *864 use thereafter. Instead, citing Caz-Perk Realty, Inc. v. Police Jury of Parish of East Baton Rouge, 207 La. 796, 22 So.2d 121, 124 (1945), the leading case interpreting La. R.S. 48:701, the court found that the standard for abandonment and closure by the public authority is whether the streets or roads "have been abandoned or are no longer needed for public purposes."
The quoted language of Caz-Perk, applied in Coliseum Square, provides a two-fold test directly from the express statutory language of La. R.S. 48:701. First, the road may in fact be abandoned (de facto abandonment) and no longer in use by members of the public. Otherwise, when the road is still in use, the public need for the continuance of the road may be weighed by the public authority, and so long as the decision on its need is not arbitrary or capricious, the formal abandonment will be given the legal effect of ending the public use. Commenting on the Caz-Perk and Coliseum Square decisions for road closure, Professor Hargrave observed:
... the use of the arbitrary and capricious formula was not in an abstract sense, but in the sense of whether the road was used or not, and whether it was needed or not. It probably would be more precise to refer to the rule simply in terms of the statutethe dedication can be revoked if the road is abandoned or no longer needed for public use. Once that principle is applied to a given set of facts by a municipality or police jury, the courts, in exercising judicial review, will give much discretion to the executive body. Only if that decision as to abandonment or need is shown to have been arbitrary or capricious will it be overturned.
Hargrave, supra, footnote 19.
In the present case, at the time of the 1988 abandonment resolution by the police jury, the use of the road was not abandoned in fact by the public. Though the traffic over this last half-mile dead end stretch of the dirt and gravel rural road was clearly minimal, involving primarily hunting and timber activities by the owners of the McMath and Gatson tracts, that occasional yet normal use of the remote rural road certainly did not amount to de facto abandonment of the public servitude. In IP Timberlands Operating Co. v. DeSoto Parish Police Jury, supra, this court dealt with a similar dead end rural road. The road was likewise a tacitly-dedicated servitude road because of prior police jury maintenance. However, when the suit was filed in 1987, it was clear that the police jury had ceased all maintenance of the road years before in the early 1970's, and the defendants claimed that the police jury's abandonment in fact of the road had caused the servitude to lapse. This court ruled:
Even after the parish maintenance stopped, the public, in the form of hunters, trappers, fisherman, nature lovers and adjacent landowners, continued their regular use of the road. Consequently, the trial court ruled that since there had not been nonuse of the road by the public for ten years, the road had not lost its public nature.
In Robinson v. Beauregard Parish Police Jury, [351 So.2d 113 (La.1977)], the court addressed the question of whether a bridge upon which plaintiff's decedent was killed was public or private. The Supreme Court found that the road was public and there had been no abandonment through nonuse. The Supreme Court stated: "... the Court of Appeal gave undue emphasis to the fact that the road was `only used' by cattlemen, hunters, fishermen and loggers, [Robinson v. Beauregard Parish Police Jury,] 352[342] So.2d [696] at *865 699[(La.App. 3d Cir.1977)]; these are members of the body politic and their use can reasonably be termed public use."
In Fore v. Volentine, 385 So.2d 860 (La.App. 2d Cir.1980), this court found that a servitude on a road built and regularly maintained by the parish had not been lost by ten-year prescription based on nonuse where parties to the suit used the road for access to their property. Also, hunters and trappers had used the road until the defendants placed fences across it and planted the roadway.
Id. at 608-609.[2]
Since the Old Road was not abandoned de facto, the second standard for measuring the effectiveness of an act of abandonment becomes the test for the resolution of this dispute. Was the police jury's decision that the Old Road was no longer "needed for public purposes," arbitrary and capricious? It is here that we find that this state's significant public policy regarding enclosed estates cannot be ignored. Notably, the public necessity in first maintaining the road to its dead end location was for service to the Gatson tract as a remote rural enclosed estate. Accordingly, with the Union Parish Police Jury holding ownership to the Old Road in public trust, its 1988 actions without appropriate consideration of the enclosure of adjoining property owners will be closely scrutinized.
Unlike the closure of the single city block in Coliseum Square Ass'n, supra, which did not create an enclosed estate for the single property owner which owned both sides of that disputed street, the termination of the Old Road as a right of passage would make the Gatson tract an enclosed estate. Despite the so-called "precarious right-of-way" exception found by the trial court and first recognized by this court's ruling in Robinson v. Herring, supra, the Robinson court was quick to point out that the "sufferance" of neighbors and their non-binding permissive allowance for passage only temporarily alleviated the property's enclosed status. The court said, "[w]hen, and if, he is denied the use of this route to the highway, he may then avail himself of the beneficent provisions of the law, which guarantee an enclosed land owner access to the nearest highway."[3]Id. at 813. Thus, in considering whether the police jury's action may be upheld so as to now recognize Bailey's unencumbered ownership of the Old Road, we will view such action as having caused the creation of an enclosed estate.
*866 In Rockholt v. Keaty, 256 La. 629, 641, 237 So.2d 663 (1970), speaking broadly about the importance of the Civil Code's legal servitude for the right of passage to the enclosed estate, our supreme court observed:
While Article 699 [now La. C.C. art. 689] has been generally accepted as designed to benefit the landowner so he could produce profit for himself and obtain full utility of his land, it must now be deemed also to offer protection of public interest. As land becomes less available, more necessary for public habitation, use, and support, it would run contrary to public policy to encourage landlocking of such a valuable asset and forever removing it from commerce and from public as well as private benefit.
With this policy in mind, we must deny Bailey's request that the police jury's action be recognized as having vested him with full ownership of the Old Road because of its effect in landlocking the Gatson tract. Our law as a whole should not be construed as sanctioning termination of one right of passage as "no longer needed for public purposes" pursuant to La. R.S. 48:701, while imposing on the same servient estate another right of passage pursuant to the important public policy of La. C.C. art. 689. That would be an anomalous exercise with the law. The police jury's abandonment resolution could revoke the public servitude only if the Old Road was no longer needed. Yet, the very policy of La. C.C. article 689, which then required the freeing of Gatson's enclosed estate by passage through the Bailey tract, demonstrates that the Old Road was needed and should not have been abandoned in the first place.
Luneau v. Avoyelles Parish Police Jury, supra, is a case directly on point in which the court applied the Caz-Perk Realty analysis in revoking a formal resolution of abandonment for a tacitly-dedicated rural road, finding it to be arbitrary and unreasonable because of the need of an adjoining landowner whose tract became enclosed. Significantly, in the formal act of abandonment, the police jury in that case went further than in the present case and expressly stated that the "property will revert back to its original owners." Nevertheless, in reaching its conclusion that the formal resolution did not divest the road from public ownership the court concluded:
... our research discloses no case upholding the abandonment of an established and well-maintained public road, and certainly not where that road constitutes the only means whereby an abutting landowner may enter or leave his property."
Id. at 634 (emphasis supplied).
In summary, the trial court's ruling which we now reverse focused primarily on the Louisiana law for enclosed estates and employed the jurisprudential exception denying relief to enclosed estates whose owners have precarious access rights under the Robinson v. Herring ruling of this court. While that analysis may have been correct, it was reached only after the trial court first concluded that the 1988 police jury resolution of abandonment freed Bailey's land of the real right burden of the servitude. However, because the police jury held ownership of the road servitude in public trust for the tract owners adjoining the Old Road and the public at large, our law has never recognized an automatic revesting of full ownership in the landowner(s) affected by the public servitude without the right of the beneficiaries of that public trust to test the authority's resolution of abandonment in the courts. In such litigation, just as the initial public ownership of the tacitly-dedicated road arises under La. R.S. 48:491 outside the *867 public conveyance records by acts of maintenance and possession of the roadway, the loss of the ownership of that servitude likewise does not result by the single act of the public body in passing the resolution if the existing facts regarding the use of the road demonstrate that the road remains "needed for public purposes."
In this case, the legislation allowing for the closure of public roads need not conflict with the Civil Code's protection of enclosed estates. The result we reach harmonizes the policies of both bodies of law, and the police jury's act of abandonment which created the conflict must be viewed as an arbitrary and capricious action which cannot deprive the Gatson tract of access to a public road.
Nevertheless, given the noted lack of comprehensive legislation for this abandonment setting, we choose to fashion a limited judgment giving some effect to the action of the police jury which was not made a party to this action. The police jury's decision to cease maintenance is not disturbed by this ruling. Certain rights in the disputed road were in the nature of a personal servitude or right of use (La. C.C. arts. 639, et seq.) for the general public before the police jury's action abandoning the maintenance of the Old Road. The effect of the police jury's action ending that broad general public use has not been placed at issue in this case, and such use may remain restricted by the defendant.
The servitude right which is the subject of this dispute, however, has regulated the ownership of these neighboring properties more as an actual predial servitude in favor of the dominant estate ownership of the Gatson tract. In the language of Civil Code article 648, the properties are located so as to allow the Gatson tract to derive benefit from the charge on the servient Bailey tract. The servitude initially arose as a legal servitude. La. C.C. art. 665; La. R.S. 48:491. Just as legal predial servitudes under La. C.C. art. 729 may be altered by agreement of the parties if the public interest is not affected adversely, our judgment in this case in favor of Gatson shall grant an altered use of the Old Road with the allowance to Bailey to continue to maintain the gates for the protection of his remote rural tract. Such restriction on Gatson's access is not an unreasonable hindrance to the exercise of the servitude given the use of the lands in question. Howes v. Howes, 499 So.2d 314 (La.App. 1st Cir.1986).
Accordingly, it is hereby ordered, adjudged and decreed that a servitude of passage along the Old Road shall continue to encumber the Southwest Quarter of the Northeast Quarter of the Southeast Quarter of Section 10, Township 23 North, Range 1 West, in favor of James Bernard Gatson and his successors-in-title to the Gatson property in Sections 10 and 11. Said servitude of passage is subject to the right of defendant, John Bailey, to maintain closed gates at the west and east boundaries of his ten-acre tract.
Costs of appeal are assessed equally to both parties.
REVERSED AND RENDERED.

*868 APPENDIX I

NOTES
[1] La. C.C. art. 689 provides: The owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. He is bound to indemnify his neighbor for the damage he may occasion.
[2] Additionally, we note that Bailey did not raise the issue of prescription of non-use in this case. However, even after 1988 and within ten years of the filing of this suit, parties including Gatson continued to utilize the roadway for hunting, logging, and access to the McMath and Gatson lands, albeit through the added impediment of Bailey's gates which were not locked. Even with that partially restricted use, La. C.C. art. 759 provides that "a partial use of the servitude constitutes use of the whole."
[3] In this case, the trial court's ruling determined that Gatson could access his property by traveling from Bailey's western gate south and east around the Bailey tract along the Honeycutt road to where it ended in the Southeast quarter of the Southeast quarter of Section 10. From that point, Gatson admittedly used an old logging road traveling approximately 100 yards to a utility right-of-way which ran back northward to a point on the Old Road immediately east of the Bailey tract. On this route, Gatson presumably would use the property of three owners, Honeycutt, McMath and the utility company. The record is devoid of any evidence as to whether one or more of these owners might consider Gatson's use of their property as a trespass. Their sufferance, which Bailey asserted in the nature of an affirmative defense against Gatson's claim for an enclosed estate, appears indeed precarious on the present record.