RICHLAND PLANTATION, INC.
v.
EAST FELICIANA PARISH.
No. 2007 CA 0038.
Court of Appeals of Louisiana, First Circuit.
December 21, 2007.
Charles E. Griffin, II, Attorney for Plaintiff-Appellee, Richland Plantation, Inc.
Samuel C. D'Aquilla, District Attorney, Amanda M. McClung, Assistant District Attorney, Attorneys for Defendant-Appellant, East Feliciana Parish.
Before PARRO, KUHN, AND DOWNING, JJ.
PARRO, J.
The Parish of East Feliciana appeals a judgment declaring that a road running north from Richland Creek to Louisiana Highway 422 through property owned by Richland Plantation, Inc. had been abandoned as a result of ten years of non-use and that full ownership of the property reverted to Richland Plantation, Inc. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
On December 19, 2005, Richland Plantation, Inc. (Richland), a Louisiana corporation authorized to do and doing business in Louisiana, with its principal place of business and domicile in the Parish of East Feliciana (the Parish), filed suit against the Parish, through its governing body, the East Feliciana Parish Police Jury (the Police Jury). Richland claimed that a portion of Ellis Road running north from Richland Creek through its property to Highway 422 (Hwy. 422) was never formally dedicated or deeded to the Parish, but for many years was used by the public as a road and was maintained by the Parish. However, Richland alleged that public use and maintenance had been terminated for more than ten years; therefore, the road was abandoned by the Parish and full ownership of the property reverted to it. Richland also claimed that for over ten years, it had been in peaceful, continuous, and uninterrupted possession of the old road north of Richland Creek to Hwy. 422 and of its adjacent property. This possession was interrupted on September 7, 2001, when the Parish filed an expropriation suit against Richland for property needed to re-build a bridge where Ellis Road crosses Richland Creek.
Richland requested the court "to declare that the defendant has no claim, possession or use of the petitioner's property, which lies north of Richland Creek, and particularly the abandoned roadway from Richland Creek to Louisiana Highway 422." Richland sought judgment in its favor, "declaring that the petitioner shall be maintained in its possession, use and enjoyment of this property without disturbance from the defendant ...."
The Parish denied Richland's claim that it had abandoned the road. It claimed the road was temporarily closed in December 1996, because the bridge across Richland Creek was dilapidated and unsafe. In January 1997, the Police Jury minutes reflected its vote "to temporarily close Ellis Road from the black top to where the bridge is out. When the bridge is opened the road will also be opened." To further that goal, in November 2000, the Police Jury passed a resolution to begin the process of expropriating property around the bridge in order to erect a new structure. A plan for the new bridge was approved and pending as State Project No. XXX-XX-XXXX of the "Off System Bridge Replacement Program." In September 2001, the Police Jury filed a petition for expropriation, and a judgment was rendered in its favor in March 2005. However, on appeal to this court, that judgment was declared null for lack of proper notice to Richland. See East Feliciana Parish v. Richland Plantation, Inc., 05-1626 (La. App. 1st Cir. 6/21/06), 943 So.2d 387, 389.[1] In the matter now before us, the Parish contends that the litigation process it undertook in the expropriation suit establishes that it did not have any intention of abandoning the road, but was doing everything possible to get the bridge rebuilt so the road could be re-opened. It also claims ten years had not elapsed since the closure and non-use of the road.
At the trial, both parties presented witnesses who had varying recollections of exactly when the road had been closed or become impassible. Photographs of the gravel road south of the bridge where it was still open and maintained were compared with photographs of the closed area of the road, which was overgrown with plants and seriously eroded. The bridge railings were twisted and bent, and the wooden planks were rotted and broken. A forester testified for Richland that one of the trees in the roadbed had been growing there for eleven years; a cross-section of the trunk showing its growth rings was submitted into evidence. In addition to witnesses' testimony, the record included some bridge inspection reports, as well as certified copies of the minutes from the Police Jury, showing when and why the road had been closed and when the expropriation process to rebuild the bridge was approved.
During closing arguments at the trial, the court remarked that it considered the matter a suit for declaratory judgment, rather than a possessory action, as Richland had suggested. Finding the roadway had been out of public use for over ten years, the court rendered judgment in favor of Richland on September 21, 2006, "declaring that the area formerly known as Ellis Road between Richland Creek and State Highway 422 in East Feliciana Parish has been abandoned, is no longer a public road; and the full ownership has reverted to Richland Plantation, Inc." On November 3, 2006, the Parish filed this devolutive appeal.

SHOW CAUSE ORDER
When the appeal was lodged, this court examined the record and, citing Louisiana Code of Civil Procedure article 3662,[2] issued a show cause order to the parties as to whether the appeal should or should not be dismissed. The show cause order was referred for resolution to the panel deciding the merits of the appeal.
Article 3662 states:
A judgment rendered for the plaintiff in a possessory action shall:
(1) Recognize his right to the possession of the immovable property or real right therein, and restore him to possession thereof if he has been evicted, or maintain him in possession thereof if the disturbance has not been an eviction;
(2) Order the defendant to assert his adverse claim of ownership of the immovable property or real right therein in a petitory action to be filed within a delay to be fixed by the court not to exceed sixty days after the date the judgment becomes executory, or be precluded thereafter from asserting the ownership thereof, if the plaintiff has prayed for such relief; and
(3) Award him the damages to which he is entitled and which he has prayed for.
A suspensive appeal from the judgment rendered in a possessory action may be taken within the delay provided in Article 2123, and a devolutive appeal may be taken from such judgment only within thirty days of the applicable date provided in Article 2087(1)-(3).
Richland contended its lawsuit was a possessory action. Therefore, it claimed that Article 3662 is applicable to this appeal, and the Parish's devolutive appeal, filed beyond the requisite thirty-day period, was untimely and should be dismissed by this court.
The Parish, on the other hand, citing the district court's observation in oral reasons and in the judgment, as well as noting its own understanding of the lawsuit, argued that this lawsuit was not a possessory action, but was a suit for a declaratory judgment. This argument was based on Richland's statements in its petition that it was asking the court "to declare that the defendant has no claim, possession or use of the petitioner's property, which lies north of Richland Creek, and particularly the abandoned roadway from Richland Creek to Louisiana Highway 422," and that it sought judgment in its favor, "declaring that the petitioner shall be maintained in its possession, use and enjoyment of this property without disturbance from the defendant ... ." The Parish did not assert a claim of possession or ownership in defense of this claim, but premised its defense on facts indicating it had not abandoned the road and intended to re-open it.[3] The Parish contends that because the lawsuit was seeking a declaratory judgment, the normal sixty-day period for filing a devolutive appeal would apply.[4] It concludes that its appeal, filed within the sixty-day period, was timely. See LSA-C.C.P. art. 2087.
Louisiana's Code of Civil Procedure establishes a system of fact pleading. As long as the facts constituting a claim are alleged, the party may be granted any relief to which he is entitled under the pleadings and the evidence; the "theory of the case" doctrine, under which a party must select a theory of his case or defense and adhere to it throughout litigation, has been abolished. Frisby v. Mugnier, 06-2288 (La. App. 1st Cir. 9/14/07), ___ So.2d ___, ___ 2007 WL 2772133. No technical forms of pleading are required. LSA-C.C.P. art. 854. Recovery may be granted to a party under any legal theory justified by the facts pled. See LSA-C.C.P. art. 862; Lieux v. Mitchell, 06-0382 (La. App. 1st Cir. 12/28/06), 951 So.2d 307, 317, writ denied, 07-0905 (La. 6/15/07), 958 So.2d 1199. The problem with the case we are reviewing is that Richland made factual allegations that could fit either a possessory action or a declaratory judgment action, yet classification as one or the other is needed in order to determine which appeal delay should be applied to the Parish's devolutive appeal.
After reviewing the jurisprudence discussing similar claims that a roadway has either been established as a public road through maintenance by a governmental body or has been abandoned by the governing body, we observe that most of them have been treated as actions for a declaratory judgment, rather than as possessory actions. See e.g., Curtis v. Goebel, 101 So.2d 462 (La. App. 1st Cir. 1958); Luneau v. Avoyelles Parish Police Jury, 196 So.2d 631 (La. App. 3rd Cir. 1967); Strickland v. Stafford, 322 So.2d 893 (La. App. 1st Cir. 1975); Miller v. Calcasieu Parish Police Jury, 441 So.2d 306 (La. App. 3rd Cir. 1983), writ denied, 444 So.2d 121 (La. 1984); Sylvester v. St. Landry Parish Police Jury, 461 So.2d 534 (La. App. 3rd Cir. 1984); IP Timberlands Operating Co. v. De Soto Parish Police Jury, 552 So.2d 605 (La. App. 2nd Cir. 1989); Winn v. Jefferson Davis Parish Police Jury, 560 So.2d 89 (La. App. 3rd Cir. 1990); Danforth v. Claiborne Parish Police Jury, 571 So.2d 707 (La. App. 2nd Cir. 1990); U.S. Silica Co. v. Wooldridge, 34,763 (La. App. 2nd Cir. 10/31/01), 799 So.2d 693; Southern Amusement Co., Inc. v. Pat's of Henderson Seafood & Steak, Inc., 03-767 (La. App. 3rd Cir. 3/31/04), 871 So.2d 630; cf. Anderson v. Police Jury of East Feliciana Parish, 452 So.2d 730 (La. App. 1st Cir.), writ denied, 457 So.2d 13 (La. 1984) (possessory action). It is clear from the district court's oral and written reasons that the judge also considered this a declaratory judgment action. Therefore, it was reasonable for the Parish to file its appeal within the normal sixty-day period, rather than the thirty-day period applicable to possessory actions.
Moreover, the judgment in this case did not restore possession of the roadway to Richland, as would be the expectation under Article 3662, but restored full ownership of the roadway to Richland, as would be the result under LSA-R.S. 48:701. We note also that in the petition, Richland claimed an ownership interest in the roadbed as well as its possession, stating in paragraph six that "the road was abandoned by the defendant in favor of the petitioner, as the property owner of said roadway traversed." Therefore, the petition did not state either a true possessory action or petitory action. See LSA-C.C.P. arts. 3651 through 3662.
We are mindful that appeals are favored in the law and should not be dismissed unless the reason for doing so is free from doubt. Fraternal Order of Police v. City of New Orleans, 02-1801 (La. 11/8/02), 831 So.2d 897, 899; Gold Dust Graphics, Inc. v. Diez, 06-0323 (La. App. 1st Cir. 12/28/06), 951 So.2d 270, 274. We conclude, therefore, that although this suit had some of the characteristics of a possessory action, it is more accurately described as a suit seeking a declaratory judgment. For that reason, we recall the show cause order and maintain the appeal.

APPLICABLE LAW: ABANDONMENT OF PUBLIC ROAD
A public road is one that is subject to public use. The public may own the land on which the road is built or merely have the right to use it. LSA-C.C. art. 457. The courts have held that maintenance of a road by a police jury for three continuous years gives rise to a "tacit dedication" of the road to public use by its owner. See LSA-R.S. 48:491(B)(1)(a);[5] Frierson v. Police Jury of Caddo Parish, 160 La. 957, 107 So. 709 (1926); Curtis, 101 So.2d at 463; Strickland, 322 So.2d at 895; Herring v. Guitreau, 619 So.2d 1161, 1164 n.6 (La. App. 1st Cir. 1993); Melancon v. Giglio, 96-2507 (La. App. 1st Cir. 3/13/98), 712 So.2d 535, 539.
The language of LSA-R.S. 48:701 arguably indicates that it applies only to dedicated roads or streets whose "soil" or full ownership is vested in the public by recordation of a plat or by a title instrument in favor of a public authority. Hargrave, Developments in the LawProperty, 50 La. L. Rev. 353 (1989). However, in the absence of comprehensive legislation for the situation involving tacit dedications, the Louisiana courts have applied the statute and its standard for abandonment to tacitly dedicated servitude roads. Gatson v. Bailey, 39,835 (La. App. 2nd Cir. 6/29/05), 907 So.2d 859, 863.
Tacit or implied dedication does not disturb the ownership of the roadbed of a dedicated road, but grants a servitude of passage to the public. Chevron Oil Co. v. Wilson, 226 So.2d 774, 776 (La. App. 2nd Cir.), writ denied, 254 La. 849, 227 So.2d 593 (1969). Where there is a servitude of public use and the road is abandoned, the land reverts free of any servitude to the landowner who made the dedication, or to the subsequent purchaser if the grantor conveyed his full title interest in the land subsequent to the dedication. St. Martin Parish Police Jury v. Michel, 229 So.2d 463, 464 (La. App. 3rd Cir. 1969); U.S. Silica Co., 799 So.2d at 696.
Abandonment of a public road must be evidenced by (1) a formal act of revocation in accordance with LSA-R.S. 48:701, (2) relocation of the public road by the governing body, or (3) clear and well-established proof of intent by the governing body to abandon. Nonuse of a strip of land as a public road or street for a period in excess of ten years may also result in termination of the public use.[6] Yiannopoulos, Common, Public, and Private Things in Louisiana: Civilian Tradition and Modern Practice, 21 La. L. Rev. 696, 736 (1961); Robinson v. Beauregard Parish Police Jury, 351 So.2d 113, 116 (La. 1977); Kennedy v. McBride, 06-0208 (La. App. 3rd Cir. 9/27/06), 939 So.2d 691, 694.
In Caz-Perk Realty, Inc. v. Police Jury of Parish of East Baton Rouge, 207 La. 796, 22 So.2d 121, 124 (1945), the court found that the standard for abandonment and closure by the public authority is whether the streets or roads "have been abandoned or are no longer needed for public purposes." The quoted language of Caz-Perk provides a two-fold test directly from the express statutory language of LSA-R.S. 48:701. First, the road may in fact be abandoned (de facto abandonment) and no longer in use by members of the public. Otherwise, when the road is still in use, the public need for the continuance of the road may be weighed by the public authority, and so long as the decision on its need is not arbitrary or capricious, the formal abandonment will be given the legal effect of ending the public use. Gatson, 907 So.2d at 863.
Courts may declare rights and other legal relations by declaratory judgment in cases where it is appropriate. LSA-C.C.P. art. 1871. The scope of appellate review is limited to determining whether the trial court abused its discretion in granting a declaratory judgment. Liberto v. Rapides Parish Police Jury, 95-456 (La. App. 3rd Cir. 11/2/95), 667 So.2d 552, 556; U.S. Silica Co., 799 So.2d at 696-97.

DISCUSSION
Richland asserts in its petition that the roadway at issue in this case runs through its property and was never formally dedicated or deeded to the Parish, but at some time began being used and maintained by the Parish as a public road. The Parish agrees that it maintained this roadway and a bridge across Richland Creek for many years before closing it in 1996 due to the bridge's unsafe condition. Nothing in Richland's evidence suggests that the Parish or the Police Jury executed any formal act of revocation of any portion of Ellis Road or any relocation of the road. Therefore, because the evidence showed the Parish maintained the roadway for over three years, a "tacit dedication" of a servitude for public use was created. Furthermore, based on the Police Jury minutes in the record that show its intent was to rebuild the bridge and re-open the road, we also conclude there was no proof of any intent to abandon this roadway.
Therefore, the only means by which the Police Jury's servitude of public use of the roadway could be terminated is by factual non-use for more than ten years, such that the roadway could be deemed abandoned. See LSA-C.C. arts. 753 and 3448.[7] Within that ten-year period, even occasional use or use by only one person or one family constitutes public use. See Harris v. Adams, 203 So.2d 809, 811-12 (La. App. 4th Cir. 1967); Trahan v. Fontenot, 380 So.2d 1240, 1242 (La. App. 3rd Cir. 1980); Wise v. Key, 445 So.2d 98, 101 (La. App. 2nd Cir. 1984); Winn, 560 So.2d at 91-92. The public status of the road is not lost by prescription when adjacent landowners use the road for access to their own property. See IP Timberlands, 552 So.2d at 609; Lincoln Parish Police Jury v. Davis, 559 So.2d 935, 940 (La. App. 2nd Cir. 1990).
The issue of whether the roadway was used during the ten-year period before the filing of this lawsuit is a factual issue. Therefore, this court reviews the district court's factual findings under the manifest error standard of review. The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court; and 2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La. 1987). Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary to conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. See Stobart v. State, through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La. 1993). Therefore, we must review the record to determine whether there is a reasonable factual basis for the trial court's finding in this case.
Jack R. Jones, the president of Richland, testified that the road was closed off prior to 1994 and had not been used by anyone since that time. He said the road was blocked off by the Parish next to Hwy. 422 and later was blocked off on the other end. He recalled that sawhorses and a "Road Closed" sign were in place before 1994, which was the year his son went off to college. In late 1996, a barbwire "gap" was installed by the Police Jury and a section of the bridge was completely removed. Jones said the road north of the bridge was closed before 1994, and had no traffic since that time. He identified the photographs of the road and bridge. Jones said Richland had pasture and woods on both sides of the road north of the bridge and cows graze on the former roadbed where it is overgrown with weeds and grass. Jones further stated that Richland does not use the northern part of the road to get access to its property, but crosses it like any other part of the pasture alongside it.
George Talmadge Bunch, Jr., the sheriff of the Parish, said he had been sheriff since 2000 and an employee of the sheriffs office since 1994. He was familiar with Ellis Road and the Richland Creek Bridge, and believed the last time it was open was during a short period in early 1994. He said that north of the creek, Richland owns all the property, and there is no need for public access to that portion of the road.
Gaston Lanaux, III, a licensed forester, testified concerning the age of a tree that was located in the roadbed of Ellis Road. He identified its location from photographs and said he went to the site to match a cross-section "disc" from a tree to the trunk from which it had been cut. He testified that there were eight visible growth rings in that disc, but that a rule of thumb for estimating the age of the tree is to add three years when the cross-section of the trunk is taken more than twelve inches from the ground. This accounts for the fact that the higher portions of the trunk will show fewer growth rings, because trees grow only from their terminal buds, and a given line on the trunk will not move upward as the tree grows. Therefore, based on his analysis, the tree that had been growing in the roadbed was eleven years old when it was cut in June 2006. He said there was no indication that the tree had been damaged in its growth, as would occur if it had been hit by vehicles or road-grading equipment. Lanaux further testified that there were additional trees growing in the old roadbed, including one that was actually growing on the remains of the old bridge over Richland Creek.
Clarence Edward Payne, Sr. was employed by the Police Jury; from 1991 until shortly before trial, he was a road supervisor. He said Ellis Road was closed because of the bridge condition, with signs posted, dirt piled up across the road, and planks removed from the bridge. He said that before the road was closed, the Parish maintained the road on the south side of the bridge. Everything north of that point, running across Richland property, was closed. He recalled that the closure was requested by the Department of Transportation and Development, and occurred between 1996 and 1997. Payne brought that request before the Police Jury during the December 1996 meeting. However, Payne also said there were sawhorses or some other kind of barricade before 1994 in order to keep heavy traffic from using the bridge. Payne identified some bridge inspection records showing the bridge was already in terrible shape in 1988. Payne indicated his foreman generally checked the bridges out, and the last time he had actually been on the road was sometime before it was closed. He said the sawhorses and other barricades were erected after 1988 and before the road was actually fenced off.
Olan L. Stubbs, the Parish manager, had been employed by the Police Jury since January 2006. He testified that from the Richland Creek north to Hwy. 422, Ellis Road was closed and a "gap" on the road prevented people from accessing the road. He did not recall the last time he had used the north portion of Ellis Road, although he was in forest fire-fighting activities and he knew that he had used certain portions of it "in north or south" for those activities between 1989 and 2001. His knowledge of when the road was closed was based on the December 1996 minutes of the Police Jury meeting; he could only "assume that it was operable prior to that date." Other than those records, he said he had no personal knowledge about the facts of the closing of the bridge and the north portion of the road.
Judith Kelly, the secretary-treasurer of the Police Jury, identified certified copies of the minutes from December 17, 1996, January 6, 1997, and November 21, 2000. She recalled that in January 1997, Jones had asked the Police Jury to place a gap across Ellis Road close to Hwy. 422 to prevent people from using the north portion of the road to dump trash down near the bridge. She did not know whether there were barricades in place on the north end prior to that January 1997 meeting. She admitted she had never been to the site, and said some barricades could have been put up without being officially authorized in a Police Jury meeting.
James F. Hunt, who had been a member of the Police Jury for 27 years, stated that the bridge was shut down, but the northern part of Ellis Road from the bridge to Hwy. 422 was not closed. However, he said he "hadn't been out there in a while," so he did not know if a gap or fence was in place where Ellis Road met Hwy. 422. Hunt recalled driving on the road before the bridge was closed in 1996, but could not pinpoint the exact year. He agreed it was in the mid-1990s. Hunt also admitted that if there actually was a fence or anything blocking the north portion of the road, then he simply did not know that this had been done or when it had been done. He said he had no personal knowledge of the north portion of road being used or maintained since 1994.
Jones testified on rebuttal that the north portion of the road was closed before the fence was erected and before the closure was officially accomplished in 1996. He said, "Now, I don't know what they got in their minutes, but I live there and I know when it was done." He said there were sawhorses closing off the road before the gap was put in place in 1996.
Obviously, there were conflicting stories about exactly when and how the northern portion of Ellis Road was closed. Some witnesses recalled barricades across the northern part of the road as early as 1992, while others testified that the road was still open and in use until it was formally closed after the December 1996 meeting of the Police Jury. Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Williams v. City of Baton Rouge, 02-0682 (La. App. 1st Cir. 3/28/03), 844 So.2d 360, 366. While this court might have reached a different conclusion, there is a reasonable factual basis in the record for the trial court's finding that the northern portion of Ellis Road between the Richland Creek Bridge and Hwy. 422 had not been used for over ten years and was, therefore, abandoned by the Parish. Furthermore, the record as a whole does not show this factual finding was clearly wrong.
Given this factual finding by the trial court, the judgment declaring that full ownership of the roadbed had reverted to Richland is legally correct. As early as Bordelon v. Heard, 33 So.2d 88 (La. App. 1st Cir. 1947), this court concluded that ownership of a strip of land that became a public road by reason of being worked and maintained by the police jury for three years or more reverted to the landowner after the road was abandoned. See also LSA-R.S. 48:701; Gatson, 907 So.2d at 863. We conclude, therefore, that the trial court did not abuse its discretion in rendering this declaratory judgment.

CONCLUSION
For the foregoing reasons, the judgment in favor of Richland Plantation, Inc. and against the Parish of East Feliciana is affirmed. All costs of this appeal, in the amount of $1,770.50, are assessed against the Parish.
APPEAL MAINTAINED; AFFIRMED.
NOTES
[1] Richland filed the instant suit while the expropriation appeal was pending before this court.
[2] A typographical error in the show cause order references a non-existent article, LSA-C.C.P. art. 366.
[3] The road abandonment statute is LSA-R.S. 48:701, which provides as follows:

The parish governing authorities and municipal corporations of the state, except the parish of Orleans, may revoke and set aside the dedication of all roads, streets, and alleyways laid out and dedicated to public use within the respective limits, when the roads, streets, and alleyways have been abandoned or are no longer needed for public purposes.
Upon such revocation, all of the soil covered by and embraced in the roads, streets, or alleyways up to the center line thereof, shall revert to the then present owner or owners of the land contiguous thereto.
Nothing in this Section shall be construed as repealing any of the provisions of special statutes or charters of incorporated municipalities granting the right to close or alter roads or streets.
[4] Courts may declare rights and other legal relations by declaratory judgment in cases where it is appropriate. LSA-C.C.P. art. 1871; U.S. Silica Co. v. Wooldridge, 34,763 (La. App. 2nd Cir. 10/31/01), 799 So.2d 693, 696.
[5] LSA-R.S. 48:491(B)(1)(a) states:

All roads and streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by the authority of a parish governing authority within its parish, or by the authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be, if there is actual or constructive knowledge of such work by adjoining landowners exercising reasonable concern over their property.
[6] Louisiana Civil Code article 753 states, "A predial servitude is extinguished by nonuse for ten years." According to Revision Comment-1977, this provision reproduces the substance of Article 789 of the Louisiana Civil Code of 1870, and does not change the law.
[7] Article 3448 describes "prescription of nonuse" as "a mode of extinction of a real right other than ownership as a result of failure to exercise the right for a period of time."